REWIS ET AL. *v.* UNITED STATES

No. 5342.   Argued January 19, 1971—
Decided April 5, 1971

MARSHALL, J., delivered the opinion of the Court, in which all members joined except WHITE, J., who took no part in the decision of the case.

*Albert J. Datz* argued the cause and filed briefs for petitioners.

*Sidney M. Glazer* argued the cause for the United States.   With him on the brief were *Solicitor General Griswold, Assistant Attorney General Wilson, Beatrice Rosenberg,* and *Michael G. Kelly.*

MR. JUSTICE MARSHALL delivered the opinion of the Court.

In this case, petitioners challenge their convictions under the Travel Act, 18 U. S. C. § 1952, which prohibits interstate travel in furtherance of certain criminal activity.[1] Although the United States Court of Appeals for the Fifth Circuit narrowed an expansive interpretation of the Act, the Court of Appeals affirmed petitioners' convictions. For the reasons stated below, we reverse.

Petitioners, James Rewis and Mary Lee Williams, were convicted along with two other defendants in the United States District Court for the Middle District of Florida.[2]

---

[1] Title 18 U. S. C. § 1952 (1964 ed. and Supp. V) provides:

"(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

"(1) distribute the proceeds of any unlawful activity; or

"(2) commit any crime of violence to further any unlawful activity; or

"(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

"and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

"(b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics, or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States."

[2] Petitioners were convicted of eight substantive violations under § 1952 and of conspiracy to violate the section. Petitioner Rewis was sentenced to five years' imprisonment on each count, to run concurrently. Petitioner Williams was sentenced to three years' imprisonment on each count, to run concurrently, subject to parole under 18 U. S. C. § 4208 (a)(2). Petitioner Rewis was also convicted of two counts of having failed to purchase a wagering tax

Their convictions arose from a lottery, or numbers operation, which petitioners admittedly ran in Yulee, Florida, a small community located a few miles south of the Georgia-Florida state line. Petitioners are Florida residents, and there is no evidence that they at any time crossed state lines in connection with the operation of their lottery. The other two convicted defendants are Georgia residents who traveled from their Georgia homes to place bets at petitioners' establishment in Yulee.

The District Court instructed the jury that mere bettors in a lottery violated Florida law, and that if the bettors traveled interstate for the purpose of gambling, they also violated the Travel Act. Presumably referring to petitioners, the District Court further charged that a defendant could be found guilty under the aiding and abetting statute, 18 U. S. C. § 2,[3] without proof that he personally performed every act constituting the charged offense. On appeal, the Fifth Circuit held that § 1952 did not make it a federal crime merely to cross a state line for the purpose of placing a bet and reversed the convictions of the two Georgia residents because the evidence presented at trial was insufficient to show that they were anything other than customers of the gambling operation.[4] However, the Court of Appeals upheld peti-

---

stamp. These latter two convictions were reversed by the Court of Appeals under the intervening decisions of this Court in *Marchetti* v. *United States,* 390 U. S. 39 (1968), and *Grosso* v. *United States,* 390 U. S. 62 (1968).

[3] 18 U. S. C. § 2 provides:

"(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

"(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

[4] 418 F. 2d 1218. The Government has not sought review of that part of the Court of Appeals decision reversing the conviction of the two Georgia residents.

tioners' convictions on the ground that operators of gambling establishments are responsible for the interstate travel of their customers. 418 F. 2d 1218, 1222.

We agree with the Court of Appeals that it cannot be said, with certainty sufficient to justify a criminal conviction, that Congress intended that interstate travel by mere customers of a gambling establishment should violate the Travel Act.[5] But we are unable to conclude that conducting a gambling operation frequented by out-of-state bettors, by itself, violates the Act. Section 1952 prohibits interstate travel with the intent to "promote, manage, establish, carry on, or facilitate" certain kinds of illegal activity; and the ordinary meaning of this language suggests that the traveler's purpose must involve more than the desire to patronize the illegal activity. Legislative history of the Act is limited, but does reveal that § 1952 was aimed primarily at organized crime and, more specifically, at persons who reside in one State while operating or managing illegal activities located in another.[6] In addition, we are struck by what Congress

---

[5] Both parties correctly concede that the questions in this case are solely statutory. No issue of constitutional dimension is presented.

[6] Incorporated in the Senate report (S. Rep. No. 644, 87th Cong., 1st Sess., 2–3, dated July 27, 1961) the following appears:

"The bill, S. 1653, was introduced by the chairman of the committee, Senator James O. Eastland, on April 18, 1961, on the recommendation of the Attorney General, Robert F. Kennedy, as a part of the Attorney General's legislative program to combat organized crime and racketeering.

"The Attorney General testified before the committee in support of the bill, S. 1653, on June 6, 1961, and commented:

" 'We are seeking to take effective action against the racketeer who conducts an unlawful business but lives far from the scene in comfort and safety, as well as against other hoodlums.

" 'Let me say from the outset that we do not seek or intend to impede the travel of anyone except persons engaged in illegal businesses as spelled out in the bill. . . .

" 'The target clearly is organized crime. The travel that would

did not say. Given the ease with which citizens of our Nation are able to travel and the existence of many multistate metropolitan areas, substantial amounts of criminal activity, traditionally subject to state regulation, are patronized by out-of-state customers. In such a context, Congress would certainly recognize that an expansive Travel Act would alter sensitive federal-state relationships, could overextend limited federal police resources, and might well produce situations in which the geographic origin of customers, a matter of happenstance, would transform relatively minor state offenses into federal felonies. It is not for us to weigh the merits of these factors, but the fact that they are not even discussed in the legislative history of § 1952 strongly suggests that Congress did not intend that the Travel Act should apply to criminal activity solely because that activity is at times patronized by persons from another State. In short, neither statutory language nor legislative history supports such a broad-ranging interpretation of § 1952. And even if this lack of support were less apparent, ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity, *Bell* v. *United States,* 349 U. S. 81, 83 (1955).

The Government concedes as much, but offers an alternative construction of the Travel Act—that the Act is violated whenever the operator of an illegal establish-

---

be banned is travel "in furtherance of a business enterprise" which involves gambling, liquor, narcotics, and prostitution offenses or extortion or bribery. Obviously, we are not trying to curtail the sporadic, casual involvement in these offenses, but rather a continuous course of conduct sufficient for it to be termed a business enterprise.'

.        .        .        .        .

" 'Our investigations also have made it quite clear that only the Federal Government can shut off the funds which permit the top men of organized crime to live far from the scene and, therefore, remain immune from the local officials.' "

ment can reasonably foresee that customers will cross state lines for the purpose of patronizing the illegal operation or whenever the operator actively seeks to attract business from another State. The first half of this proposed interpretation—reasonable foreseeability of interstate patronage—does not merit acceptance. Whenever individuals actually cross state lines for the purpose of patronizing a criminal establishment, it will almost always be reasonable to say that the operators of the establishment could have foreseen that some of their customers would come from out of State. So, for practical purposes, this alternative construction is almost as expansive as interpretations that we have already rejected. In addition, there is little, if any, evidence that Congress intended that foreseeability should govern criminal liability under § 1952.

There may, however, be greater support for the second half of the Government's proposed interpretation—that active encouragement of interstate patronage violates the Act. Of course, the conduct deemed to constitute active encouragement must be more than merely conducting the illegal operation; otherwise, this interpretation would only restate other constructions which we have rejected. Still, there are cases in which federal courts have correctly applied § 1952 to those individuals whose agents or employees cross state lines in furtherance of illegal activity, see, e. g., United States v. Chambers, 382 F. 2d 910, 913–914 (CA6 1967); United States v. Barrow, 363 F. 2d 62, 64–65 (CA3 1966), cert. denied, 385 U. S. 1001 (1967); United States v. Zizzo, 338 F. 2d 577, 580 (CA7 1964), cert. denied, 381 U. S. 915 (1965), and the Government argues that the principles of those decisions should be extended to cover persons who actively seek interstate patronage. Although we are cited to no cases that have gone so far and although much of what we have said casts substantial doubt on the Government's

broad argument, there may be occasional situations in which the conduct encouraging interstate patronage so closely approximates the conduct of a principal in a criminal agency relationship that the Travel Act is violated. But we need not rule on this part of the Government's theory because it is not the interpretation of § 1952 under which petitioners were convicted. The jury was not charged that it must find that petitioners actively sought interstate patronage. And we are not informed of any action by petitioners, other than actually conducting their lottery, that was designed to attract out-of-state customers. As a result, the Government's proposed interpretation of the Travel Act cannot be employed to uphold these convictions.

*Reversed.*

MR. JUSTICE WHITE took no part in the decision of this case.