**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Eugene Albert McCORMICK, Defendant-Appellant.**

**No. 18839.**

United States Court of Appeals, Seventh Circuit.

May 12, 1971.

James Manahan, DeWitt, Richards & Manahan, Indianapolis, Indiana, for defendant-appellant.

Stanley B. Miller, U. S. Atty., Richard Darst, William W. Knowles, Asst. U. S. Attys., Southern Dist. of Ind., Indianapolis, Ind., for plaintiff-appellee.

Before FAIRCHILD, CUMMINGS and STEVENS, Circuit Judges.

PER CURIAM.

In July 1969, a 4-count indictment was returned against defendant, charging him with using the mails to facilitate a lottery forbidden by Indiana law. The indictment was brought under 18

---

U.S.C. § 1952.[1] Each count covered different months in 1968. After a bench trial, defendant was found guilty on each count. As to Count I, he was fined $1,000, sentenced to 90 days "in a jail type or treatment institution," and placed on probation for four years and nine months. Any sentence as to the remaining counts was suspended.

The only question we consider is whether this prosecution exceeds the intended limits of federal criminal jurisdiction under Section 1952. Here defendant advertised for salesmen to peddle lottery tickets even though lotteries violated Indiana law. These advertisements were placed in the *Indianapolis Recorder*, which was a weekly newspaper for black people. Its total 15,000 circulation consisted primarily of residents of the Indianapolis inner city. In addition, a comparatively small percentage of copies was mailed to other residents of Indiana. The out-of-state, mailed circulation was 200 to 500 and was not limited to neighboring states.[2] The testimony does not show that the defendant sought to obtain any salesmen from outside Indiana by advertising in the *Indianapolis Recorder*, nor was there any showing that he employed out-of-state salesmen through use of these advertisements or otherwise. Rather, the testimony shows that he sought to escape any transgression of federal law by avoiding any interstate aspects in his gambling operation. Seemingly, all his salesmen were Hoosiers, all the sales of lottery tickets were intrastate, and the proceeds were kept in Indiana.

The Government relies upon neither the fact that defendant procured publication of his advertisements in the *Indianapolis Recorder* nor the mailings of the paper to Indiana residents as the basis for the federal jurisdiction. It urges instead that the interstate mailings alone constituted sufficient use of a "facility in interstate * * * commerce, including the mail, with intent to * * * facilitate" the illegal lottery, within the scope of Section 1952. We disagree.

In Rewis v. United States, 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493, the Supreme Court reversed the conviction of a gambler whose lottery operation was frequented by out-of-state bettors. Construing this same Section, the Court emphasized the intent of Congress to strike at the truly interstate operations of organized crime. The Court refused to

---

1. 18 U.S.C. § 1952 provides in pertinent part:

"(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

"(1) distribute the proceeds of any unlawful activity; or

"(2) commit any crime of violence to further any unlawful activity; or

"(3) otherwise promote, manage, establish, carry on, facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

"(b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics, or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States."

2. The district court found that the out-of-state circulation was approximately 500. This accorded with defendant's pre-trial brief. However, the advertising salesman of the publication testified that the out-of-state circulation was "maybe a couple hundred—200." This was the figure employed in defendant's post-trial brief. Government Exhibit 12, which was admitted without objection, shows that the out-of-state circulation was exactly 351. This exhibit supports our conclusion that the illegal activity was essentially local in character.

**318**

give broad-ranging application to the statute, particularly since Congress gave no indication that it wished to

"alter the sensitive federal state relationships, * * * overextend limited federal police resources, * * * [or] produce situations in which the geographic origins of customers, a matter of happenstance, would transform relatively minor state offenses into federal felonies." 401 U.S. at p. 812, 91 S.Ct. at p. 1059.

Similarly, in United States v. Altobella, 442 F.2d 310 (7th Cir. 1971), this Court struck down the conviction of two extortioners under Section 1952 where jurisdiction was claimed on the basis that the victim's check had been cleared by mail between Chicago and Philadelphia, stating:

"[W]hen both the use of the interstate facility and the subsequent act is as minimal and incidental as in this case, we do not believe a federal crime has been committed." 442 F.2d at p. 310.

Here too the activities engaged in by defendant were essentially local. The role played by the interstate mailings was "a matter of happenstance" and "minimal and incidental" to the operation of the illegal lottery. As in *Rewis* and *Altobella,* the interstate activities relied upon by the Government were the acts of others and were not actively sought or made a part of the illegal activity of the accused. There was no showing that defendant's lottery in any way depended upon or included interstate operations. Unlike United States v. Miller, 379 F.2d 483 (7th Cir. 1967), defendant neither "used" nor "caused to be used" any interstate facility as an instrumental part of his illegal operations. We must therefore conclude that no federal crime was committed, and that the State of Indiana is the only appropriate authority to punish defendant for maintaining this local lottery.

The judgment is reversed.