The UNITED STATES of America,
Plaintiff,

v.

E. Garrison ST. CLAIR, Defendant.

No. 76 CR 246.

United States District Court,
E. D. New York.

Aug. 11, 1976.

David Trager, U. S. Atty., Douglas Kramer, Asst. U. S. Atty., Brooklyn, N. Y., for plaintiff.

Harvey J. Michelman, New York City, for defendant.

## MEMORANDUM AND ORDER

GEORGE C. PRATT, District Judge.

At the close of the evidence in this case, defendant moved to dismiss Count 9 of the indictment. After due deliberation, the Court granted the motion for the reasons which appear below. Because the question presented is a novel one, however, the Court assured the attorneys that a formal decision on the question would be forthcoming. This is that decision.

Counts 7 through 9 of this indictment are interrelated. They charge that the defendant "willfully endeavored by means of misrepresentation, to obstruct, delay and prevent the communication [to a United States Postal Inspector] of information" relating to a criminal violation. The three separate counts are related to three individuals to be referred to herein as witnesses # 7, # 8 and # 9 respectively.

The evidence showed that defendant had been charged with a mail violation and that he had consented to a temporary restraining order putting a stop on his mail deliveries. On the same day that he consented in open court to the temporary restraining order, he met with the postal inspector and an Assistant United States Attorney. At that meeting, it developed that there was a question as to whether a certain letter had been enclosed along with invoices which the defendant had sent to various business concerns.

The view asserted by the government representative was that if no such letter was enclosed, then the invoices, on their face billings for listings in a commercial directory, would be fraudulent because they implied that the recipients had previously ordered the listings when, in fact, they had not. On the other hand, if the explanatory letter had actually been included with the mailings, then the inference of fraud would be negated and there very likely would have been no criminal prosecution. Whether or not defendant was to be prosecuted

seemed to turn, therefore, on whether the explanatory letters had been included with the invoices in the mailings.

When asked if anyone could corroborate defendant's claim that the letters were included with the mailings, defendant identified witnesses # 7, # 8 and # 9, indicating that all four of them had sat around his kitchen table on a December evening and had "stuffed" the envelopes, including therein the letters.

The U. S. Attorney then informed the defendant, in the presence of his counsel, that his story would be checked with these three witnesses, and defendant was advised not to speak to the three witnesses about the matter except to the extent of indicating that they might be contacted by the postal inspector.

■ Witnesses # 7 and # 8, formerly female acquaintances of the defendant, both testified at the trial that they had been contacted by the defendant who told them, in substance, that someone would try to get in touch with them. Defendant also requested witnesses # 7 and # 8 to tell the person who contacted them that they had stuffed the envelopes with him and that they had included three items in each envelope: the invoice, a return envelope, and the crucial letter. Defendant did not indicate to witnesses # 7 and # 8 why the requested story was important, but simply indicated that it had something to do with business.

Both of these witnesses told defendant that they would not lie for him, and in fact, when they were contacted by the postal inspector, they not only denied any knowledge of the mailing, but also told him of defendant's request that they tell a false story.

These facts, if believed by the jury, clearly fell within 18 U.S.C. § 1510, entitled "Obstruction of Criminal Investigations", which provides that anyone who "willfully endeavors by means of  *  *  *  misrepresentation  *  *  *  to obstruct, delay, or prevent the communication of information relating to a violation of any criminal stat-

ute of the United States by any person to a criminal investigator" shall be guilty of a crime.

■ Clearly, the defendant here willfully endeavored to delay or prevent the communication of information by witnesses # 7 and # 8 to the postal inspector. His means was a misrepresentation of the significance and importance of the information relating to the stuffing of the envelopes. The failure of his endeavor was immaterial. *United States v. Carzoli*, 447 F.2d 774 (CA7 1971). Consequently, defendant's motions to dismiss Counts 7 and 8 were denied.

■ Witness # 9, however, presented a different problem. That young lady was the girlfriend of the defendant and had been living with him for at least a year at the time of the trial. She contradicted the stories of witnesses # 7 and # 8 and testified to precisely the same story that defendant had requested witnesses # 7 and # 8 to tell the investigator. Witness # 9 denied that the defendant had made any attempt to influence her testimony; she insisted that she was simply relating the events as they happened.

With respect to Count 9, therefore, the question was whether there was evidence from which the jury could infer that the defendant had endeavored *by misrepresentation* to delay or prevent witness # 9 from communicating information to the investigator.

In opposition to defendant's motion to dismiss Count 9, the Government argued that while there had been no misrepresentation by defendant to witness # 9, the jury might find that the defendant had caused or procured a misrepresentation by witness # 9 to the postal inspector. According to the Government's argument, the means of misrepresentation which are required by the statute were not misrepresentations by the defendant to witness # 9, but instead, misrepresentations by witness # 9 to the government investigator. In short, the Government contends that the element of misrepresentation in this crime can be supplied by evidence that the witness misrepre-

sented facts to the government inspector, and that misrepresentation by the defendant to the witness is not required.

In support of this argument, the Government offered some of the legislative history which led up to the enactment in 1967 of § 1510. Particularly, the Government has directed the Court's attention to House Report # 658 as set forth in 1967 U.S. Code Congressional and Administrative News 1760. On page 1762, the report states:

"Your committee wishes to make abundantly clear the meaning of the term 'misrepresentation' as used in this act. It is our intention that the actual procurement by a party of another party's misrepresentation or silence to a Federal investigator would be covered even though such procurement was not achieved by any misrepresentation."

In other words, the House committee in reporting this bill asserted the same dual interpretation for the word misrepresentation as the Government here advances. Despite the clear statement of intent by the House committee, however, the Court cannot accept that interpretation of this statute, and it is for that reason that Count 9 was dismissed.

Under the statutory language it is a crime to obstruct a criminal investigation by the use of any of five different means: "[1] bribery, [2] misrepresentation, [3] intimidation, or [4] force or [5] threats thereof". All five of these are acts which may be carried out by a defendant. A natural reading of the statute, given its purpose to "protect" "witnesses", would require that in each case it would be the witness against whom the bribery, misrepresentation, intimidation, force or threat was directed, and that it was the defendant who bribed, misrepresented, intimidated, used force, or threatened. The Government argues, however, that in using the term misrepresentation, Congress intended more than just a defendant's making a misrepresentation to a witness. A secondary meaning was also included, so that a defendant could be guilty under the misrepresentation portion of the statute if he either (1) misrepresen-

ted to the witness or (2) collaborated with the witness in order to get the witness to misrepresent information to the investigator. Although the House committee clearly indicated that this was their intention, the language adopted by Congress does not fairly convey the subtlety of the concept.

■ The Government argues that the committee's statement of intent is clear, and the Court agrees. However, a crime cannot be created by language in a committee report; only the language which Congress finally enacted as the statute may do that, and in this case, a fair reading of this criminal statute clearly negates the interpretation urged here by the Government.

This statute was enacted to fill a gap in the criminal prosecution process. At the time of its enactment, sections 1503 and 1505 of Title 18 already prohibited attempts to influence, intimidate, impede or injure a witness in a judicial proceeding, a proceeding before a federal agency, or an inquiry or investigation by Congress or one of its committees. The gap to be filled was the possibility of obstructing criminal investigations or inquiries before a proceeding had actually been initiated. According to the same House Report # 658:

"The proposed legislation would remedy that deficiency by providing penalties for attempting to obstruct the communication * * *, thus extending to informants and potential witnesses the protections now afforded witnesses * * * in judicial, administrative, and congressional proceedings."

Thus the statute was enacted to *protect* informants and potential witnesses prior to the time formal proceedings commence.

As stated by the committee elsewhere:

"*The sole purpose of the act is to protect informants and witnesses against intimidation or injury by third parties* with the purpose of preventing or discouraging informants or witnesses from supplying or communicating information to the Federal investigator." (*Id.* at 1762 (emphasis supplied))

■ In view of these clear statements that the purpose of the act was to protect witnesses against intimidation or injury by third parties, one might wonder why the committee also indicated an intention that the "misrepresentation" included in the statute extended beyond the acts of the defendant and included a voluntary misrepresentation by the witness as well. If a witness' misrepresentation was a voluntary act and not the result of defendant's conduct, then under well settled principles the defendant would not have committed any criminal act. On the other hand, if the witness' misrepresentation resulted from acts of bribery, intimidation, force or threats by the defendant, then defendant would be guilty under the other acts proscribed by the same statute. Where a witness' misrepresentation is procured by, say, a friendly agreement (as may well have been the case here) it may well be that the defendant and the witness would be subject to other penal statutes, but their conduct does not seem to fall within the express prohibition of § 1510.

General guidelines for interpreting criminal statutes have frequently been provided by the Supreme Court. The underlying principles were concisely summarized in *United States v. Bass,* 404 U.S. 336, 347–8, 92 S.Ct. 515, 522–3, 30 L.Ed.2d 488 (1971):

"First, as we have recently reaffirmed, 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.' *Rewis v. United States,* 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971). See also *Ladner v. United States,* 358 U.S. 169, 177, 79 S.Ct. 209, 213, 3 L.Ed.2d 199 (1958); *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955); *United States v. Five Gambling Devices, etc.,* 346 U.S. 441, 74 S.Ct. 190, 98 L.Ed. 179 (1953) (plurality opinion for affirmance). In various ways over the years, we have stated that 'when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite.' *United*

States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 221–222, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952). This principle is founded on two policies that have long been part of our tradition. First, 'a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so fair as possible the line should be clear.' *McBoyle v. United States,* 283 U.S. 25, 27, 51 S.Ct. 340, 341, 75 L.Ed. 816 (1931) (Holmes, J.). See also *United States v. Cardiff,* 344 U.S. 174, 73 S.Ct. 189, 97 L.Ed. 200 (1952). Second, because of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity. This policy embodies 'the instinctive distastes against men languishing in prison unless the lawmaker has clearly said they should.' H. Friendly, "Mr. Justice Frankfurter and the Reading of Statutes", in Benchmarks 196, 209 (1967). Thus, where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant."

The Court is faced with the task of construing a somewhat ambiguous statute in one of two ways. One way would limit the proscribed misrepresentation to that of the defendant himself; the other would broaden the statutory term to include misrepresentations by a witness. Despite the expressed view of the House committee, Congress' language in the statute itself is not "clear and definite", and it can be extended to the facts of this case only by an improper "ambiguous implication". See also *Toussie v. United States,* 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970); *United States v. Campos-Serrano,* 404 U.S. 293, 92 S.Ct. 471, 30 L.Ed.2d 457 (1971).

Here, I have concluded that Congress has not "plainly and unmistakably", *United States v. Gradwell,* 243 U.S. 476, 485, 37 S.Ct. 407, 411, 61 L.Ed. 857 (1917), made it a federal crime for a defendant to endeavor to prevent communication of information to an investigator by means of a witness' misrepresentation to the investigator. Had Congress intended to include the witness' misrepresentation as one of the means by which a defendant could be charged with the crime, appropriate language to that effect could have been included in the statute. Without clear language defining the act of the defendant which is prohibited, penal consequences should not follow.

Accordingly, the Government's attempt to broaden the meaning of the term misrepresentation in 18 U.S.C. § 1510 to include misrepresentations made by a witness to an investigator had to be rejected, and Count 9 of the indictment, which rested upon the broadened interpretation of the statute, had to be dismissed.