**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Sonja Elizabeth O'DELL, Lisa Marie Eastman (81–5004), Annette Moran (81–5006), Kathy Sue Abell (81–5007), Defendants-Appellants.**

**Nos. 81–5004, 81–5006 and 81–5007.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 8, 1981.

Decided Feb. 17, 1982.

David Kaplan, David Datillo, Louisville, Ky., for defendants-appellants.

Alexander Taft, U. S. Atty., Louisville, Ky., Scott T. Wendelsdorf, Mikell McMurry, Asst. U. S. Attys., Louisville, Ky., for plaintiff-appellee.

Before LIVELY, ENGEL and JONES, Circuit Judges.

ENGEL, Circuit Judge.

This case involves the limits of federal jurisdiction under the Travel Act, 18 U.S.C. § 1952.[1] O'Dell, Eastman, Moran and Abell ("appellants") operated massage parlors in Louisville, Kentucky and advertised them in three Louisville newspapers: the Courier-Journal, the Times and the Entertainer. Appellants did not specifically request that their advertisements be included in editions sold outside Kentucky. Nevertheless, all three of these papers send copies into Indiana as a matter of course, and as a result some of appellants' ads were distributed across state lines. In addition to their otherwise legal activities,[2] appellants ran local prostitution businesses at the massage parlor locations. Indictments were returned against appellants charging that they had violated the Travel Act by placing massage parlor ads in the Louisville papers with the intent to further illegal prostitution.[3] To show the use of a facility of interstate commerce, the government relied complete-

---

1. The Travel Act provides:

   § 1952. Interstate and foreign travel or transportation in aid of racketeering enterprises

   (a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

   (1) distribute the proceeds of any unlawful activity; or

   (2) commit any crime of violence to further any unlawful activity; or

   (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

   and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

   (b) As used in this section "unlawful activity" means (1) any business enterprise in-volving gambling, liquor on which the Federal excise tax has not been paid, narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act), or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States.

   (c) Investigations of violations under this section involving liquor shall be conducted under the supervision of the Secretary of the Treasury.

   18 U.S.C. § 1952 (1970 and Supp.1981).

2. The operation of massage parlors is a business activity licensed and regulated by local ordinances of the City of Louisville.

3. Prostitution is illegal in Kentucky under Ky. Rev.Stat. §§ 529.010 et seq.

ly upon the fact that copies of the Louisville newspapers had been distributed in Indiana. Appellants moved to have the indictments dismissed for lack of federal jurisdiction. Following denial of these motions by the district court, appellants pled guilty on a stipulated set of facts, but conditioned the pleas upon a finding by this court that jurisdiction exists under the Travel Act.[4] Thus, the sole issue on this appeal is whether appellants' activities were sufficient to constitute a use of a facility of interstate commerce intended to promote an unlawful act, as required for jurisdiction under the Travel Act.

■ In *Rewis v. United States*, 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971), the Supreme Court considered the question of the reach of the Travel Act. The defendants in *Rewis* were convicted under the Act for operating gambling establishments frequented by out-of-state bettors. The Court reversed the convictions and held that "Congress did not intend that the Travel Act should apply to criminal activity solely because that activity is at times patronized by persons from another State." 401 U.S. at 812, 91 S.Ct. at 1059. This conclusion was supported by the Court's determination of the purpose of the Travel Act: "§ 1952 was aimed primarily at organized crime and, more specifically, at persons who reside in one State while operating or managing illegal activities located in another." 401 U.S. at 811, 91 S.Ct. at 1059 (footnote omitted). The Court also found important the fact that the legislative history of the Travel Act was silent as to the breadth of the Act's application. Because "Congress would certainly recognize that an expansive Travel Act would alter sensitive federal-state relationships, could overextend limited federal police resources, and might well produce situations in which

... a matter of happenstance, would transform relatively minor state offenses into federal felonies," the Court refused to give an expansive construction to the Travel Act's coverage without more explicit directions from Congress. 401 U.S. at 812, 91 S.Ct. at 1059. Thus, in construing the Travel Act in the present case, we keep in mind two important factors from *Rewis*. First, the Travel Act is not aimed at local criminal activity; rather, its purpose is to attack crime that has true interstate aspects. Second, courts must be careful not to read the language of the Act so broadly as to have consequences that go beyond congressional intent.

■ The determination whether federal jurisdiction under the Travel Act extends to cover given criminal activity depends on the facts of each individual case rather than a broad rule of law. If the nexus between a defendant's criminal activity and interstate travel or commerce becomes too tenuous or indirect, an application of the Act to that activity would be beyond the intent of Congress. After closely examining the facts in the instant case, we conclude that appellants' placing of advertisements for their massage parlors in Louisville newspapers, some copies of which were sent to Indiana, did not provide the necessary jurisdictional basis for a federal criminal conviction under the Travel Act.

Looking at the stipulated facts, we see no indication of an interstate criminal operation. The facts do not show that appellants were connected with prostitution businesses in other states, that appellants moved across state lines in the course or in the furtherance of prostitution, or even that the appellants did or intended to entice customers from other states into Kentucky for their prostitution business. Instead, the government can show only that appellants

4. A similar procedure was approved in an appeal from a *nolo contendere* plea in *United States v. Heller*, 579 F.2d 990, 992 n.1 (6th Cir. 1978). Although the procedure recommended in *Heller* was a motion to arrest judgment under Rule 34 of the Federal Rules of Criminal Procedure, the court allowed a prior motion to dismiss to serve as the basis for the appeal because the motion allowed the district court to pass on the defendant's contentions. Similarly, in the instant case, the motions to dismiss made prior to the guilty pleas gave the district judge an opportunity to decide the jurisdictional reach of the Travel Act and properly preserved the question for appeal.

placed an advertisement for the massage parlors in newspapers that were primarily local, making no specific request that the advertisements be included in the Indiana editions. Appellants had interstate connections only because the newspapers sent copies to Indiana as a matter of course. The government does not claim that the advertising referred to prostitution even indirectly; instead, the advertisements dealt solely with massage parlors which are not in themselves illegal. Any furtherance of prostitution, therefore, would be at most an indirect result of the happenstance that the Louisville papers were also distributed in Indiana. This connection with interstate commerce, we conclude, is too slim a basis for federal jurisdiction under the Travel Act.[5] We can divine no congressional intent to impose upon already overcrowded dockets of federal courts the responsibility to enforce an essentially state criminal law under the facts of this case.

The government urges that this case is controlled by *United States v. Eisner*, 533 F.2d 987 (6th Cir.), *cert. denied*, 429 U.S. 919, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976), where this court held that the Act covered the deposit or cashing of out-of-state checks by prostitutes from their customers. In that case, however, the prostitutes were using the extensive network of interstate banking and monetary transfers. More important, their activities were directly related to the illegal prostitution. The checks in *Eisner* were a result of the defendant's illegal activity and had no relation to any legitimate business. The *Eisner* defendants deliberately used interstate means, directly in furtherance of their criminal activities. Conversely, the facts in the present case show merely a use of interstate facilities not directly related to the criminal activi-

ties and with no proven purpose of having interstate effects.[6]

The judgment of the district court is vacated and the cause remanded with instructions to dismiss the indictments.

---

**5.** The issue in this case is purely statutory. We are concerned only with the extent of federal jurisdiction that Congress provided in the Travel Act and not with the constitutional limitations on Congress' power. *See Rewis v. United States, supra*, 401 U.S. at 811, 91 S.Ct. at 1059 n.5.

**6.** Although portions of *Eisner* indicate that questions of Travel Act jurisdiction can be re-

solved by merely looking at the face of the Act, literal interpretations at some point could stretch the Act's jurisdiction beyond logical bounds. *Eisner* should not be read this broadly. The present case requires us to draw a line at the outside of the Travel Act's coverage. As an aid in making this determination, the legislative history and Congress' purpose are relevant, if not essential, to our task.