**UNITED STATES of America,**

v.

**Galo R. VELASTEGUI and GMJ Travel & Shipping Corp.,Inc., Defendants.**

**No. 98 CR. 965(SAS).**

United States District Court, S.D. New York.

April 30, 1999.

Opinion Adhering to Decision on Grant of Reconsideration June 8, 1999.

Peter B. Sobol, Assistant United States Attorney, Southern District of New York, New York City, for U.S.

Raymond J. Aab, Luis Velez, New York City, for Defendant.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Defendants Galo R. Velastegui and GMJ Travel and Shipping Corp. ("GMJ") move to dismiss the indictment filed against them on September 2, 1998. They are charged with two counts of illegal money transmitting in violation of 18 U.S.C. §§ 1960 and 2 and one count of structuring of currency transactions in violation of 31 U.S.C. § 5324(a).[1]

Defendants first contend, with regard to the transmitting counts, that during the period covered by the indictment GMJ operated as an authorized agent of one or

---

**1.** Defendants also move to suppress certain of Velastegui's post-arrest statements. An evidentiary hearing on that matter, which re- mains *sub judice,* was held on March 25, 1999.

more state-licensed money transmitters.[2] As a result, defendants argue, they did not transmit money illegally within the meaning of 18 U.S.C. § 1960.[3] Defendants also contend that the criminal sanctions imposed by the state and federal transmitting statutes apply only when the illegal transmitting constitutes money laundering. Neither defendant was charged with money laundering. Defendants assert that there is insufficient notice that unlicensed money transmitting, in the absence of money laundering, would subject an offender to criminal sanctions.

Defendants next contend, with respect to the structuring count, defendants contend that because the bank in which they deposited funds filed currency transaction reports ("CTRs"), they cannot be guilty of structuring. Defendants also claim that they subjectively believed the bank would file such reports, even when it did not. In sum, defendants assert that they lacked the intent to violate 31 U.S.C. § 5324(a).[4]

## I. Factual Background

Galo R. Velastegui serves as the sole shareholder and officer of GMJ, a New York corporation engaged in the money transmitting business. *See* Affidavit of Galo Velastegui ("Velastegui Aff.") at ¶ 2. GMJ has offices at 1633B Lexington Avenue in Manhattan, as well as at 82C Bridge Avenue in Red Bank, New Jersey. *See* Government's Memorandum of Law in Opposition to Defendants' Motion to Dismiss and Suppress ("Gov.Mem.") at 1. GMJ

started a money transmitting business in May 1995. *See* Velastegui Aff. at ¶ 4.

A money transmitting business, or money remitter, receives money from a customer and then sends that money to a recipient in a place that the customer designates. *See* Gov. Mem. at 1. Typically, after a customer gives a transmitter an amount of money to send to the designated party, usually in a foreign country, the transmitter notifies a "payer" in that country, who then pays the money to the designee upon his or her arrival at the payer's office. *See* Velastegui Aff. at ¶ 7. The transmitter then remits to the payer a balance equal to the amount paid the designee, plus the payer's commission. *See* *id.*

GMJ never obtained a license from the New York State Banking Department to operate as a money transmitter. *See* Defendants' Memorandum of Law in Support of Motion to Dismiss and Suppress ("Def.Mem.") at 2. However, at different times since the commencement of its money transmitting business, GMJ entered into agency agreements with various licensed money transmitters as permitted by the New York Banking Law.[5] *See* Velastegui Aff. at ¶ 14. Specifically, GMJ had an agency agreement with Remesas Quisqueyana, Inc. ("RQI"), in effect from May 19, 1995 to June 16, 1997; with RIA Telecommunications of New York, Inc. ("RIA"), in effect from August 17, 1995 to October 1997; with BHD Corp. ("BHD"),

---

2. This is permitted by Section 648 of the New York Banking Law. *See* N.Y. Banking Law § 648(a).

3. "Whoever conducts, controls, manages, supervises, directs, or owns all or part of a business, knowing the business is an illegal money transmitting business, shall be fined in accordance with this title or imprisoned not more than 5 years, or both." 18 U.S.C. § 1962(a). "[T]he term 'illegal money transmitting business' means a money transmitting business ⟨which affects interstate or foreign commerce in any manner and degree and— (A) is intentionally operated without an appropriate money transmitting license in a

State where such operation is punishable as a misdemeanor or a felony under State law...." *Id.* § 1962(b)(1).

4. "No person shall for the purpose of evading the reporting requirements of section 5313(a)...cause or attempt to cause a domestic financial institution to fail to file a report required under section 5313(a) [or]...structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions." 31 U.S.C. § 5324(a).

5. *See* N.Y. Banking Law § 648(a).

in effect from June 6, 1996 to December 1997; with Envios De Valores La Nacional ("Nacional"), in effect from March 10, 1998 to August 17, 1998; and with American Express Money Gram ("AmEx"), in effect from September 1995 to date. *See id.*

Generally, these agreements appointed GMJ as an agent for the sole purpose of collecting money for transmission by the licensed principal. *See* Velastegui Aff. at ¶ 17. For example, GMJ's agreement with RQI obligated GMJ to deliver to RQI, through deposit into its bank account or otherwise, all "funds...left with [GMJ] for transmission by RQI" at the end of each day. *See* Def. Mem., Ex. F at 3. GMJ's agreements with RIA and BHD contained similar provisions.[6] *See id.*, Ex. G at 5, 18. In the event GMJ exceeded its authority under any of these agreements, each provided for cancellation by the principal. *See id.*, Ex. F at 13; Ex. G at 7, 20.

GMJ, in contravention of these agreements, often sent funds left for transmission by its principals directly to Mexican payers. *See* Velastegui Aff. at ¶ 16. One of the payers to which GMJ directly sent funds was Envios GMJ, a Mexican company owned in part by defendant Velastegui. *See id.* at ¶ 9. As a result of GMJ's breaches, RQI, RIA, BHD, and Nacional each canceled its agency contract with GMJ. *See id.* at ¶ 17. Nevertheless, during the entire time relevant to the indictment, GMJ remained an agent of at least one licensed principal. *See id.* at ¶ 14. The indictment charges defendants with one count of illegal money transmitting for the period of January 2, 1997 to December 9, 1997, and another count for the period of June 26, 1998 to July 20, 1998. *See* Indictment at ¶¶ 4, 6.

The indictment also charges GMJ with structuring its deposits into two of its accounts at the Ponce de Leon Federal Savings Bank ("Ponce"), at 1925 Third Avenue in Manhattan, for the purpose of evading the currency reporting requirements of 31 U.S.C. § 5313(a). *See id.* at ¶ 8. That statute requires a financial institution that receives more than $10,000.00 in a single deposit to report that transaction to the Internal Revenue Service ("IRS"). GMJ allegedly violated this statute by depositing amounts of just under $10,000.00 nearly 350 times between September 23, 1996 and October 17, 1997, totaling nearly $3 million. *See id.* GMJ asserts that it also made fifty-two deposits exceeding $10,-000.00 during that period. *See* Velastegui Aff. at ¶ 20, Ex. B. GMJ further asserts that Ponce filed CTRs with the IRS for each of the fifty-two deposits, as well as for multiple deposits made by GMJ on a single day, when the total exceeded $10,-000.00. *See id.* at ¶ 21, Ex. C. Finally, Velastegui alleges that, when he opened GMJ's accounts at Ponce, he was notified by a bank officer that Ponce would file CTRs for all deposits in a single day exceeding $10,000.00. *See id.* at ¶ 22.

## II. Discussion

### A. Standard for Dismissal of an Indictment

██ Generally, a facially valid indictment returned by a duly constituted grand jury suffices to call for a trial on the merits of the charges set forth therein. *See Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956). An indictment need only provide sufficient detail to protect the defendant against double jeopardy, and to state the elements of the charged offense to permit the preparation of a defense. *See United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir. 1975). Thus, a defendant may not challenge an indictment on the ground that it is not supported by adequate or competent evidence. *See Costello*, 350 U.S. at 359, 76 S.Ct. 406; *see also United States v. Alfon-*

---

6. Defendants have not submitted any evidence of the terms of their agency agreements with Nacional and AmEx, but have merely asserted that such agreements exist. *See* Velastegui Aff. at ¶ 14. The content of these agreements is not essential to the resolution of the issues raised by defendants' motion.

*so*, 143 F.3d 772, 777 (2d Cir.1998) ("the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment").

The government claims that defendants are moving to dismiss this indictment "on the ground that no factual 'basis exist[s]' for [these charges]." *See* Gov. Mem. at 5, quoting Affidavit of Raymond J. Aab, attorney for defendants ("Aab Aff.") at ¶ 2. Hence, the government argues, defendants' motion should be denied as "clearly premature" under the *Costello* standard. *See id.* at 6.

 A defendant, however, may raise any defense "capable of determination without the trial of the general issue" by pretrial motion. Fed.R.Crim.P. 12(b). A defense is "capable of determination" if the trial of the general issue of guilt "would be of no assistance in determining the validity of the defense." *United States v. Covington*, 395 U.S. 57, 60–61, 89 S.Ct. 1559, 23 L.Ed.2d 94 (1969). Similarly, a pretrial motion "shall be determined before trial unless the court, for good cause, orders that it be deferred for determination at the trial of the general issue or until after verdict." Fed.R.Crim.P. 12(e). "Good cause" to postpone ruling on a pretrial motion exists when a defendant's claims "are substantially founded upon and intertwined with the evidence to be presented at trial." *United States v. Williams*, 644 F.2d 950, 953 (2d Cir.1981).

While some of the defenses raised in the motion remain incapable of determination at this stage in the proceedings, others bear little relationship to the general issue of guilt and must be resolved now. The "insufficient notice" claim squarely presents an issue of law determinable before trial. Defendants' contention that they lacked the requisite intent to violate the anti-structuring statute, however, raises a question of fact that must be determined at trial.

**B. The Money Transmitting Counts**

Federal law provides criminal penalties, in the form of fines and imprisonment, for whomever "conducts, controls, manages, supervises, directs, or owns all or part of a business, knowing the business is an illegal money transmitting business." 18 U.S.C. § 1960(a). An illegal money transmitting business is "a money transmitting business which affects interstate or foreign commerce to any degree" and "is intentionally operated without an appropriate money transmitting license in a State where such operation is punishable by a misdemeanor or felony under State law." *Id.* § 1960(b). The indictment charges that defendants "did conduct, control, manage, supervise, and direct, and [Velastegui] did own all and part of, a business, knowing the business was an illegal money transmitting business" from January 2 to December 9, 1997 and from June 26 to July 20, 1998, in violation of 18 U.S.C. § 1960. Indict. at ¶¶ 4,6.

In making these charges, the indictment alleges that Velastegui owned the business while

> knowing the business was an illegal money transmitting business, to wit, a money transmitting business which affected interstate and foreign commerce in any manner and degree and was operated intentionally without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor under State law, to wit, the State of New York.

*Id.* Article XIII–B of the New York Banking Law provides that "no person shall engage in the business ... of receiving money for transmission or transmitting the same without a license therefor obtained from the superintendent ... nor shall any person engage in such business as an agent, except as an agent of a licensee .... " N.Y. Banking Law § 641. The law permits a licensee to conduct its business "through or by means of such agents and subagents as the licensee may from time to time designate or appoint." *Id.*

§ 648(a). Hence, the law does not require an agent or subagent of a licensee to obtain a license. *See id.* § 648(b). Finally, the law imposes a misdemeanor penalty on whomever "violates or participates in the violation of any of the provisions of this article." *Id.* § 650(1). Specifically, anyone who "engages in the business of receiving money for transmission or transmitting the same...without a license therefor obtained from the Superintendent as provided in this article, shall be guilty of a Class A misdemeanor." *Id.* § 650(2)(a). Receiving for transmission $10,000.00 or more in a single transaction, $25,000.00 or more within a thirty-day period, or $250,000.00 or more within a year in violation of section 650(2)(a) subjects the offender to Class E felony charges. *See id.* § 650(2)(b)(1).

New York law makes the operation of an unlicensed money transmitting business either a misdemeanor or a felony, which in turn subjects the offender to federal criminal penalties under 18 U.S.C. § 1960. Defendants contend, however, that because GMJ was an agent of one or more licensed money transmitters, and thus exempt from the licensing requirement under section 648(b), it did not engage in an unlicensed money transmitting business within the meaning of the New York Banking Law. The government counters that the New York Banking Law only permits the agent of a licensed principal to transmit money to its principal. Indeed, another section of Article XIII–B provides:

> Each agent or subagent of a licensee which sells any New York instruments...issued by such licensee shall, and each licensee shall so require each of its agents which sells any New York instruments...issued by such licensee to...remit the face amount of New York instruments to such licensee...For the purposes of this section, remittance shall include either direct payment of such funds to the licensee or the deposit of such funds in a [bank], in an account in the name of such licensee....

New York Banking Law § 651–a. The definition of "payment instrument" includes any "order for the payment or transmission of money." New York Banking Law § 640(5). The superintendent's regulations, enacted pursuant to Article XIII–B, further limit the money transmitting activities of an agent. Rule 406.3(e) provides that every licensee "require each agent under its written agency contract to conduct the authorized money transmission activities through the licensee." N.Y. Comp.Codes R. & Regs. Tit. 3, § 406.3(e). Furthermore, Rule 406.5(6) requires that all agency agreements provide

> that agents and subagents are under a duty to act only as authorized under the agency contract and that an agent and subagent who exceeds its authority is subject to cancellation of the agency contract and may result in further disciplinary action against the licensee by the superintendent.

*Id.* § 406.5(3). Defendants freely admit that GMJ sent funds left for transmission by its principals directly to Mexican payers, in violation of both section 651–a and GMJ's agency agreements with its principals. *See* Velastegui Aff. ¶ 16. The government concludes that this conduct amounts to operating an unlicensed money transmitting business under New York law, punishable by at least misdemeanor penalties, and thus subjects the defendants to the criminal sanctions of 18 U.S.C. § 1960.

Section 1960, however, criminalizes only the operation of a money transmitting business "without an appropriate money transmitting license in a State where such operation is punishable by a misdemeanor or felony under State law." 18 U.S.C. § 1960. The New York Banking Law requires an agent to remit to the licensee the amount of each transmission sold. *See* N.Y. Banking Law § 651–a. The failure to remit as required is punishable as a misdemeanor. *See id.* § 650(1) ("any person who violates...any provision of this article...shall be guilty of a misdemean-

or"). Nevertheless, unless such a failure to remit constitutes operation of a money transmitting business "without an appropriate money transmitting license," it does not fall within the ambit of conduct prohibited by 18 U.S.C. § 1960. This presents a legal question of apparent first impression.

■ In construing an ambiguous criminal statute, a court must adhere to the rule of lenity, which provides that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Rewis v. United States*, 401 U.S. 808, 812, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971). Applying the rule "ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability." *Liparota v. United States*, 471 U.S. 419, 427, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985). The Supreme Court has recently explained the rule of lenity as one of three manifestations of the constitutional requirement that criminal statutes provide fair warning. *See United States v. Lanier*, 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). According to the Court,

> First, the vagueness doctrine bars enforcement of a 'statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application' .... Second, as a sort of 'junior version of the vagueness doctrine,' ... the rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered.... Third, ... due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has disclosed to be within in its scope....

*Id.* Consequently, the *Lanier* Court defined the standard for a fair notice inquiry as "whether the statute, either standing alone or as reasonably construed, made it reasonably clear at the relevant time that the conduct was criminal." *Id.* at 267, 117 S.Ct. 1219.

Defendants contend that 18 U.S.C. § 1960 does not make reasonably clear that failing to transmit funds through its principals as required by N.Y. Banking Law § 651–a constitutes the criminal activity of operating a money transmitting business without an appropriate money transmitting license. In support of their position, they note that the superintendent's regulations provide that an agent acting outside of the scope of its agreement subjects itself to the cancellation of its agency contract and its principal to further action by the superintendent. *See* N.Y. Comp.Codes R. & Regs. Tit. 3, § 406.5(e). Indeed, RQI, RIA, BHD, and Nacional each canceled its agency contract with GMJ as a result of its direct transmission of funds to payers. *See* Velastegui Aff. at ¶ 17. Nevertheless, defendant retained an agency agreement with at least one licensed principal at all times relevant to the indictment.

■ Defendants argue that because the direct transmission of funds led to the suspension of GMJ's agency agreements— the functional equivalent of "licenses" under Article XIII–B—the direct transmission of funds could not have amounted to operating a money transmitting business without an appropriate license under a reasonable construction of 18 U.S.C. § 1960. I agree. The statute fails to make reasonably clear that operating an otherwise "licensed" money transmitting business in violation of other sections of the state banking laws, subjects the offender to federal criminal penalties. Accordingly, the portion of the indictment charging the defendants with violating 18 U.S.C. § 1960 contravenes the constitutional fair notice requirement and must be dismissed.

### C. The Structuring Count

A domestic financial institution involved in a transaction for the payment, receipt,

or transfer of United States currency is required to file a report on the transaction under certain circumstances prescribed by the Secretary of the Treasury. *See* 31 U.S.C. § 5313(a). Pursuant to this statute, such institutions must file a CTR with the IRS for each deposit, withdrawal, or exchange of currency in excess of $10,-000.00. *See* 31 C.F.R. § 103.22(a)(1). Structuring or attempting to structure transactions with a financial institution for the purpose of evading these reporting requirements subjects the offender to criminal penalty. *See* 31 U.S.C. § 5324(c). Structuring refers to the practice of dividing an amount of currency exceeding $10,-000.00 into amounts of less than $10,-000.00. *See* 31 C.F.R. § 103.11(gg). Criminal penalties are also required for anyone who, for the purpose of evading the reporting requirements, causes or attempts to cause a financial institution to fail to file a CTR. *See* 31 U.S.C. § 5324(a).

The indictment charges that GMJ "unlawfully, willfully, and for the purpose of avoiding the reporting requirements...did structure...and attempt to structure...transactions with one or more domestic financial institutions...." Indictment at ¶ 8. The indictment then enumerates a series of deposits in amounts just shy of $10,000.00 that GMJ made into its accounts at the Ponce de Leon Federal Savings Bank between September 23, 1996 and October 17, 1997. *See id.* GMJ moves to dismiss this count of the indictment on the grounds that it lacked the intent required to violate the statute. In support of this assertion, GMJ relies on three essential facts: one, that GMJ also made many deposits at Ponce in excess of $10,000.00, during the period of the indictment; two, that GMJ believed Ponce would file CTRs whenever GMJ's aggregate amount of money deposited in a single day exceeded $10,000.00; three, that the amounts of GMJ's deposits at Ponce depended solely upon the amounts of monies GMJ's clients gave it for transmission.

GMJ has submitted virtually no evidence in support of these asserted facts. Even if it had, good cause exists to postpone ruling on this part of GMJ's motion. *See Williams,* 644 F.2d at 953 (good cause exists when a defendant's claims "are substantially founded upon and intertwined with the evidence to be presented at trial"). Moreover, pretrial motions are not the appropriate devices for attacking the sufficiency of the government's evidence, because the government has not yet had the opportunity to marshal and present its proof. *See United States v. Alfonso,* 143 F.3d 772, 776 (2d Cir.1998). The indictment, in tracking the language of the statute, charges GMJ with an intent to violate the reporting requirements of 31 U.S.C. § 5324. When the charging language sets forth all the requisite elements of the offense without ambiguity, a motion to dismiss must be denied. *See Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). Here, the currency structuring count satisfies this standard. Therefore, GMJ's motion to dismiss this count of the indictment is denied.

### III. Conclusion

For the foregoing reasons, defendants' motion to dismiss the indictment is granted in part and denied in part. A conference is scheduled for May 11, 1999 at 4:30 p.m.

SO ORDERED.

### *OPINION AND ORDER ON RECONSIDERATION*

In an Opinion and Order dated April 28, 1999, the Court dismissed Counts One and Two of the Indictment which charged defendants Galo R. Velastegui and GMJ Travel and Shipping Corp. ("GMJ") with illegal money transmitting, in violation of 18 U.S.C. §§ 1960 and 2. The Court held that it was not reasonably clear that entities such as GMJ—which do not have a license to transmit money in New York State but which are agents of a licensed

money transmitter—constitute an "illegal money transmitting business" under 18 U.S.C. § 1960(b)(1) when they transmit money outside their agency capacity.[1]

On May 12, 1999, the Government requested that the Court reconsider its decision dismissing those counts for two reasons: (1) 18 U.S.C. § 1960(a) contains a scienter requirement and, therefore, cannot be unconstitutionally vague as applied to defendants;[2] and (2) defendants' conduct was specifically proscribed by § 1960. In addition, the Government now provides the Court with a letter, dated May 10, 1999, from the New York State Banking Department containing its own administrative interpretation of New York Banking law. Defendants responded in a letter dated May 20, 1999. These submissions are construed collectively as a motion for reconsideration. For the reasons stated below, the Government's motion for reconsideration is granted, and upon reconsideration, the Court adheres to its prior ruling that it was not reasonably clear that GMJ constituted an "illegal money transmitting business" under 18 U.S.C. § 1960(b)(1) when it transmitted money outside its agency capacity.

## I. The Scienter Requirement

Federal law provides criminal penalties, in the form of fines and imprisonment, for whomever "conducts, controls, manages, supervises, directs, or owns all or part of a business, *knowing* the business is an illegal money transmitting business." 18 U.S.C. § 1960(a) (emphasis added). The indictment charges that defendants "did conduct, control, manage, supervise, and direct, and [Velastegui] did own all and part of, a business, *knowing* the business was an illegal money transmitting business" from January 2 to December 9, 1997 and from June 26 to July 20, 1998, in

violation of 18 U.S.C. § 1960. Indictment at ¶¶ 4,6 (emphasis added).

A criminal statute must "define the ... offense with sufficient definiteness that ordinary people can understand what conduct is prohibited." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). However, where a criminal statute contains a scienter requirement, it "may suffice to provide adequate notice that given conduct is proscribed." *U.S. v. Thompson,* 76 F.3d 442, 452 (2d Cir.1996) (citation omitted) (statute prohibiting witness tampering contained scienter requirement and was, therefore, not "unduly vague"). The Government argues that § 1960 as applied to Velastegui cannot be impermissibly vague because in order to convict on the § 1960 charge, a jury must find the scienter element established beyond a reasonable doubt.

While this may be so, it does not alleviate the problem of insufficient notice because, as stated in the Court's earlier Opinion, the New York Banking Law, which is incorporated into § 1960, does not make sufficiently clear that defendants' conduct was illegal. In short, even if the Government can prove beyond a reasonable doubt that Velastegui *believed* his conduct to be illegal, New York law does not, in fact, criminalize his conduct. Section 1960 criminalizes the operation of a money transmitting business "without an appropriate money transmitting license in a State where such operation is *punishable by a misdemeanor or felony under State law.*" 18 U.S.C. § 1960(b)(1)(emphasis added). Thus, § 1960 requires this Court to conduct an analysis of the New York Banking Law.

## II. Interpretation of New York Banking Law

The Government submits that the Court erred in interpreting the New York Bank-

---

1. Familiarity with the facts of this case as described in the prior opinion is presumed. *See U.S. v. Velastegui,* 56 F.Supp.2d 313 (S.D.N.Y. 1999).

2. Defendants did not challenge the statute on vagueness grounds. Thus, the Court did not consider the effect of the scienter requirement.

ing Law and now submits an opinion of the New York Banking Department. *See* Correspondence from Sara Kelsey, Deputy Superintendent and Counsel, New York State Banking Department, to Assistant United States Attorney Peter Sobol, dated May 10, 1999, attached to the Sobol Affirmation, dated May 12, 1999.

New York Banking Law imposes a misdemeanor penalty on whoever "violates or participates in the violation of any of the provisions of this article." N.Y. Banking Law § 650(1). Specifically, anyone who "engages in the business of receiving money for transmission or transmitting the same ... without a license therefor obtained from the Superintendent as provided in this article, shall be guilty of a Class A misdemeanor." *Id.* § 650(2)(a). New York law makes the operation of an unlicensed money transmitting business either a misdemeanor or a felony, which in turn subjects the offender to federal criminal penalties under 18 U.S.C. § 1960. New York Banking Law also makes clear that the agents and subagents of a licensed money transmitter do not require a license with one exception that is not relevant to this case. *See* N.Y. Banking Law § 648(b) and (c). These sections, read in conjunction with one another, unambiguously require: (1) that all entities seeking to engage in the direct transmission of money, except for specified banking corporations, must first obtain a license prior to engaging in such activities; and (2) that agents and subagents are exempt from licensing to the extent that their principal is a licensed money transmitter.

GMJ never obtained a money transmitting license from the New York Banking Department. *See* Defendants' Memorandum of Law in Support of Motion to Dismiss and Suppress ("Def.Mem.") at 2. However, during the period covered by the indictment GMJ entered into agreements which permitted it to operate as an authorized agent of one or more state-licensed money transmitters which, the Government acknowledges, is permitted by

§ 648(a) of the New York Banking Law. Generally, these agreements appointed GMJ as an agent for the sole purpose of collecting money for transmission by the licensed principal. *See* Affidavit of Galo Velastegui ("Velastegui Aff.") at ¶ 17. In the event GMJ exceeded its authority under any of these agreements, each provided for cancellation by the principal. *See id.,* Ex. F at 13; Ex. G at 7, 20. In contravention of these agreements, GMJ often sent funds left for transmission by its principals directly to Mexican payers. *Id.* at ¶ 16.

Defendants argued that 18 U.S.C. § 1960 does not make reasonably clear that failing to transmit funds through its principals as required by N.Y. Banking Law § 651(a) constitutes the criminal activity of operating a money transmitting business without an appropriate money transmitting license. In support of their position, they noted that the Bank Superintendent's regulations provide that an agent acting outside the scope of its agreement subjects itself to the cancellation of its agency contract and its principal to further action by the Superintendent. *See* N.Y. Comp.Codes R. & Regs. Tit. 3, § 406.5(e). Indeed, GMJ's principals canceled their agency contracts with GMJ as a result of its direct transmission of funds to payers. *See* Velastegui Aff. at ¶ 17. Nevertheless, defendants retained an agency agreement with at least one licensed principal at all times relevant to the indictment. *See id.* at ¶ 14.

Defendants argued that because the direct transmission of funds led to the suspension of GMJ's agency agreements—the functional equivalent of "licenses" under Article XIII–B—the direct transmission of funds could not have amounted to operating a money transmitting business without an appropriate license under a reasonable construction of 18 U.S.C. § 1960. The Government's motion for reconsideration has not persuaded me that this view is wrong. The statute fails to make reasonably clear that operating an otherwise "licensed" money transmitting business, out-

side the scope of the agency agreement, in violation of other sections of the state banking laws, subjects the offender to federal criminal penalties.

The administrative interpretation of the Superintendent's regulations—that agents are exempt from licensing only to the extent that they serve in that capacity on behalf of their principal—*does not* and *did not* put defendants on notice that their conduct was illegal. As far as this Court is aware, prior to the State Banking Department's May 10, 1999 letter, neither the State Attorney General nor the Banking Department had ever published an official commentary explaining what, if any, violations of the scope of an agency agreement would constitute a crime. Even assuming *arguendo* that the May 10, 1999 letter provides notice, it cannot provide retroactive notice to the defendants who were indicted for conduct occurring prior to July 20, 1998.

### III. Conclusion

As stated in the Court's prior Opinion, an unlicensed business, such as GMJ, that breaches its agency agreement by making direct transfers of money outside of that agency agreement, might subject itself to cancellation of its contract and possible state regulatory action. However, New York Banking Law, as incorporated into 18 U.S.C. § 1960, does not make reasonably clear that such activity constitutes an illegal money transmitting business. Therefore, the Court adheres to its prior decision dismissing Counts One and Two of the Indictment.

SO ORDERED.