UNITED STATES of America, Plaintiff,

v.

Stanley Sylvester WALTON a/k/a "Payroll," and Mary Ann Ferguson, a/k/a "Brandy," Defendants.

No. Cr. 3–86–33.

United States District Court,
D. Minnesota,
Third Division.

May 13, 1986.

Jon Hopeman, Asst. U.S. Atty., Minneapolis, Minn., for plaintiff U.S.

Earl P. Gray, St. Paul, Minn., for defendant Walton.

Scott Tilsen, Asst. Federal Defender, Minneapolis, Minn., for defendant Ferguson.

---

## ORDER

DEVITT, District Judge.

The principal issue here, whether payment for prostitution services with credit cards constitutes the use of "any facility in interstate ... commerce" under the Travel Act, 18 U.S.C. § 1952, is before the court upon defendants' motions to dismiss certain counts of the indictment. We conclude, on the facts of this case, that it does, and defendants' motions are therefore denied.

The gist of the twenty-four count indictment is that the defendants operated a prostitution business enterprise under the name of Walton Productions, a Minnesota corporation. The indictment alleges violations of Minnesota prostitution laws from October 1981 through 1983. Allegedly, women, including defendant Mary Ann Ferguson, employed by defendant Stanley Walton responded to phone calls to Walton Productions by providing prostitution services and accepting payment for them with major credit cards. The jurisdictional basis for alleging Travel Act violations [1] is the use of credit cards to promote, manage, or distribute the proceeds of the unlawful business.

The defendants' motions raise an issue of first impression. No published opinions address whether a credit card is a facility in interstate commerce under the Travel Act. The defendants contend that a credit card is not a facility in interstate commerce as contemplated by the Act, comparing the use of credit cards to cash. The government argues that the terms "facility in interstate commerce" have received a broad reading and that the better analogy is between credit cards and checks.

The Travel Act prohibits the use of "any facility in interstate ... commerce, including the mail, ... with intent to ... promote, manage, establish, carry on, or facilitate the promotion, management, establish-ment, or carrying on, of any unlawful activity, ... [including] any business enterprise involving ... prostitution offenses in violation of the laws of the State in which they were committed." 18 U.S.C. § 1952(a)(3). The aim of extending federal jurisdiction to these traditionally local offenses is to assist local authorities in dealing with organized criminal activity, which in all cases is assisted in its operations by the availability of interstate commerce. *Erlenbaugh v. United States*, 409 U.S. 239, 245–46, 93 S.Ct. 477, 481–82, 34 L.Ed.2d 446 (1972). "It is, in short, an effort to deny individuals who act for such a criminal purpose access to the channels of commerce." *Id.* at 246, 93 S.Ct. at 482. Thus, the crime remains "purely local" until the perpetrator facilitates his unlawful activity by using any facility in interstate commerce.

Defendants compare their case with *United States v. Maze*, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974), in which the defendant was charged with violating the mail fraud statute, 18 U.S.C. § 1341. Maze absconded with his roommate's credit card and used it to charge meals and lodging while he traveled in several states. The Court assumed that Maze "caused" the mailings of credit card invoices to the issuing bank in Kentucky. The sole issue addressed by the Court was whether the mailings "were sufficiently closely related to [the] scheme to bring [defendant's] conduct within the statute." 414 U.S. at 400, 94 S.Ct. at 648. It held that they were not.

*Maze* is of limited precedential value and support for defendant's position. The jurisdictional elements of the mail fraud statute and the Travel Act are clearly distinguishable. Under the mail fraud statute, the defendant must: (1) cause a mailing (2) for the purpose of executing a scheme to defraud. 18 U.S.C. § 1341. Under the Travel Act, jurisdiction is also based on a two-part inquiry: (1) whether

---

**1.** Count 21 is included in defendants' motions to dismiss, although it alleges a violation of the Travel Act based on interstate travel of defendant Walton from Minnesota to Illinois. The defendants' motions, memoranda, and oral ar-guments, however, have focused exclusively on whether use of a credit card is a sufficient interstate contact. Accordingly, we assume that the jurisdictional argument is not raised as to Count 21.

the defendant used a facility in commerce, including the mail, (2) which facilitated the carrying on of the unlawful activity. 18 U.S.C. § 1952. The *Maze* Court did not refuse to extend the reach of the mail fraud statute to credit cards, 414 U.S. at n. 4, 94 S.Ct. at n. 4, as the defendants contend; rather it found that the mailings did not satisfy the second prong of the jurisdictional test. *Id.* at 405, 94 S.Ct. at 651. Thus, *Maze* does not stand for the proposition urged by the defendants, but lends support to the government's position that the use of a credit card constitutes the use of a facility in interstate commerce. Processing of the credit card charge entailed use of interstate mail.

Courts of appeal construing the Travel Act have had little difficulty with the first prong of the test—whether the defendant has used a facility in commerce. Like the Court in *Maze*, which assumed the existence of "mailings," the courts are more concerned with the degree of interstate use and its relation to the unlawful activity. Although the defendants specifically challenge whether a credit card is a "facility in commerce," the circuit opinions nevertheless provide some guidance.

The Fourth, Fifth, and Sixth Circuits have applied the "straightforward and comprehensive" language of the Act in determining the jurisdictional basis of the prosecution. *United States v. Pecora*, 693 F.2d 421, 424 (5th Cir.1982) *cert. denied*, 462 U.S. 1119, 103 S.Ct. 3087, 77 L.Ed.2d 1348 (1983); *United States v. Eisner*, 533 F.2d 987 (6th Cir.) *cert. denied*, 429 U.S. 919, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976); *United States v. LeFaivre*, 507 F.2d 1288 (4th Cir. 1974). In so doing, they have rejected any qualifying adjectives or court-made exceptions to the plain language of the statute. In *Pecora*, the court held that a single interstate phone call satisfied the Act. 693 F.2d at 424. In *Eisner* and *LeFaivre*, the courts held that depositing or cashing an out-of-state check constituted the use of a

facility in interstate commerce. *Eisner*, 533 F.2d at 992; *LeFaivre*, 507 F.2d at 1290–97.

In contrast, the Second and Seventh Circuits interject the requirement that the interstate use "relate significantly, rather than incidentally or minimally, to the illegal activity." *United States v. Raineri*, 670 F.2d 702, 717 (7th Cir.) *cert. denied*, 459 U.S. 1035, 103 S.Ct. 446, 74 L.Ed.2d 601 (1982); *United States v. Archer*, 486 F.2d 670 (2d Cir.1973). It is not always clear which prong of the jurisdictional test is modified by these words. In *Raineri*, for example, the court held that a single check crossing state lines as part of the regular clearance process was a sufficient basis for jurisdiction, but added that the "maintenance and regular use of [an out-of-state] bank account" was "significant" enough to facilitate the illegal enterprise. 670 F.2d at 717. In *Archer*, the court found that the receipt of a foreign phone call by the defendant was an incidental occurence not justifying federal jurisdiction. 486 F.2d at 682–83.

In our consideration of defendants' motions, we adopt an approach most closely aligned to the Fourth, Fifth, and Sixth Circuits. The defendants also frame the issue to suggest a two-prong analysis. Consequently, we shall address whether a facility in commerce was used without deciding whether the use facilitated the unlawful activity.[2]

Defendant Walton is charged with using a facility in interstate commerce in the operation of a prostitution service. The government contends that credit cards were used by customers to pay for prostitution services and also by Walton to distribute the proceeds of the unlawful activity.

As part of his use of credit cards in his enterprise, Walton applied at local banks for merchant accounts in the name of Walton Productions. These accounts enabled him to accept VISA, MasterCard, and

---

**2.** We note, however, that the use of credit cards appears to have become an integral part of the Walton Productions business operations.

American Express cards from his customers. In exchange for a percentage of the amounts charged, Walton Productions was permitted to accept these credit cards as payment for services rendered. Once these slips were deposited in the merchant accounts, they were mailed to clearinghouses in Iowa or Arizona. Walton Productions received a provisional credit pending clearance. Upon clearance, the slips were mailed to the customers for collection. In the event the charge failed to clear, Walton Productions' merchant account would be debited.

Counts 1 through 13 and 22 each allege an individual credit card transaction. Walton allegedly provided prostitutes with VISA and Mastercard charge slips, which the prostitutes used in accepting payment for their services. Walton submitted the completed slips to the local banks where he had merchant accounts. Counts 14 through 19 allege that the use of charge cards aided Walton in distributing the proceeds of the unlawful activity. Walton allegedly received payment for the services by credit card and, in turn, paid the prostitutes, creditors, and himself from the Walton Productions checking account. Count 24 generally alleges these same uses of credit cards for additional prostitution services in excess of $102,000.

The facts *sub judice* indicate that the only interstate activity involved in Walton Productions was the processing of the charge slips through the out-of-state clearinghouses. Except for some out-of-state customers using their American Express cards, the customers were Minnesota residents. The prostitution services were provided in Minnesota and the merchant accounts were at local banks.

■ Notwithstanding the Minnesota based activity, the interstate collection process brings the activity within the Travel Act. It also distinguishes these transactions from cash transactions. The defendants used a facility in commerce by accepting charges that required the defendants to participate in an interstate collection process. By obtaining the privilege to accept cards through local banks, the defendant submitted his business enterprise to, and reaped the benefits of a system dependent on interstate commerce and the mail. Thus, every time a credit card slip was deposited in his local account and was mailed to a clearinghouse, a facility in interstate commerce was used. Similarly, courts have found that use of the "extensive network of interstate banking and monetary transfers" has provided a sufficient basis for federal jurisdiction over prostitution. *United States v. O'Dell*, 671 F.2d 191, 194 (6th Cir.1982) (citing *United States v. Eisner*, 533 F.2d 987 (6th Cir. 1976)); *see also United States v. Raineri*, 670 F.2d 702, 717 (7th Cir.1982) (regular use of out-of-state bank account significantly facilitated illegal activity). Thus, defendants' activities were not "purely local."

Based on the foregoing, and all files, records, and proceedings herein,

IT IS ORDERED that:

Defendants' motions to dismiss the Travel Act counts are denied.