Robert McDaniel, Asst. U.S. Atty., Washington, D.C., for plaintiff.

G. Allen Dale, Washington, D.C., for Dickson.

William J. Garber, Washington, D.C., for Winslow.

**UNITED STATES of America**

v.

**Vernard V. DICKSON,
Stanley Winslow.**

Crim. No. 86–210.

United States District Court,
District of Columbia.

Oct. 3, 1986.

### MEMORANDUM OPINION

BARRINGTON D. PARKER, Senior District Judge:

Defendants Stanley Winslow and Vernard V. Dickson are charged in Count One of a multi-count indictment with violating 18 U.S.C. § 1952A, Use of Interstate Commerce Facilities in the Commission of Murder-for-Hire ("Murder-for-Hire"). That section of the federal criminal code imposes liability upon a person who "travels in or causes another ... to travel in interstate or foreign commerce, ... or uses or causes another to use ... any facility in interstate or foreign commerce with intent that a

murder be committed in violation of the laws of any State or the United States...." Defendants Winslow and Dickson are also jointly charged under local District of Columbia criminal code provisions with conspiracy and attempted first degree murder. 22 D.C.Code §§ 103 and 2401. Defendant Dickson, alone, is charged in a fourth count of the indictment with assault with intent to kill. 22 D.C. Code § 501.

Defendants' counsel have moved for dismissal of Count One of the indictment on jurisdictional grounds, arguing that Congress never intended that the Murder-for-Hire Statute be used to invoke federal jurisdiction over essentially local crimes. In response to the motion the government contends that Congress intended that the statute "reach[es] *every* murder for hire with *any* federal nexus." Government's Opposition to Defendants' Motion to Dismiss Count I, p. 3, filed July 22, 1986. (emphasis included.)

The matter has been fully briefed and argued by counsel. For the reasons set out below the Court determines that § 1952A should be narrowly interpreted, that the underlying facts relied upon by the government are insufficient to support the murder-for-hire count of the indictment, that jurisdiction over the defendants is lacking, that the first count of the indictment should be dismissed.

### A.

The parties' dispute over the jurisdictional scope of § 1952A complicates an otherwise local criminal matter. According to the factual record developed in pretrial proceedings, the following events led to the return of the indictment. The defendants' alleged criminal scheme began on April 29,

1986 and terminated with their arrest on May 7, 1986.[1] The genesis of the aborted criminal venture was an old romance of defendant Dickson's which had turned sour. According to the testimonial record of the preliminary and detention hearing before the Magistrate, Dickson's testimony at a recent pretrial hearing, and evidence gathered by the local police also involved from the inception of the scheme,[2] Dickson had previously formed an acquaintance with a lady friend. The two had developed a mutual interest and had dated steadily for several months. The lady's interest waned and she suggested ending the romance but continuing a friendship. The defendant was disappointed and not entirely satisfied with the turn of events. Meanwhile the lady's interests were directed towards another male companion. Upon learning of this development, the defendant Dickson became obsessed with jealousy. He confronted his competitor, verbally abused him, and allegedly attempted to run him down with a motor vehicle. The government also contends that Dickson decided to pursue a more direct course of action when he contacted Stanley Winslow, his friend and alleged co-conspirator to help him hire a person to murder the competitor. According to the government, Winslow acted as a middleman to arrange a contract between Dickson and a contract killer to eliminate the intruder.

The interstate nexus began at the point when an undercover officer of the District of Columbia police force, posing as a "hit man" was contacted by Winslow. After a number of telephone calls and meetings related to identifying the male intruder and potential victim and discussing the financial arrangements of the contract, Dickson agreed to pay the officer $200 for the mur-

1. The Statement of Facts sworn to by the District of Columbia investigating officer which accompanied the criminal complaint brought before Magistrate Dwyer are also relied upon. May 7, 1986.

2. The preliminary hearing and detention hearing were held jointly before Magistrate Dwyer on May 9, 1986.

The pretrial hearing held on September 12, 1986, concerned a change in the terms of Dickson's conditional release pursuant to 18 U.S.C. § 3142.

The police evidence took the form of several taped conversations between the defendants and the undercover police office posing as a contract murderer which took place on April 29 and 30, May 1, 5, and 6, 1986.

der. During the course of the negotiations/arrangements, the officer provided defendants with a local telephone number where he could be reached. When that number was called, a paging device was activated which in turn transmitted electronic beeper signals to the officer. The beeper signals were transmitted by wire and then by radio signals to locations in the District of Columbia and the neighboring jurisdictions of Maryland or Virginia. On several occasions defendants called the undercover officer who at the time was in Virginia. This activated the paging device and the officer in turn responded to the calls while he still was in Virginia.

### B.

The government contends that both the beeper transmissions and the triggering of the officer's interstate call provided a sufficient interstate nexus to exercise federal jurisdiction under § 1952A. There can be no dispute that the government has established the requisite interstate nexus. Indeed, a single telephone call is sufficient to invoke federal jurisdiction. *See U.S. v. Pecora*, 693 F.2d 421 (5th Cir.1982) (holding one telephone call from defendant to sheriff sufficient to exercise jurisdiction for an indictment charging attempted bribery under § 1952). Rather, the Court focuses its attention upon the types of murder-for-hire cases which warrant federal jurisdiction.

The reach of federal jurisdiction under § 1952A poses an important question of federalism: how far did Congress intend to intervene into the traditional state responsibilities of law enforcement? [3] Congress and the courts have historically deferred to state sovereignty in the criminal realm in contrast to the general trend expanding federal jurisdiction at the expense of states in civil matters. *See*, J. Baker, *Nationalizing Criminal Law: Does Organized*

*Crime Make it Necessary or Proper*, 16 Rutgers L.J. 495 (1985). This historic reticence offers background for a general analysis of federal criminal statutes. However, each statute must be examined individually to determine Congress' specific intent. To interpret the proper application of the Murder-for-Hire Statute, this Court applies the principle of statutory construction long enunciated by the Supreme Court. "In the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the intent of Congress." *United States v. American Trucking Assn*, 310 U.S. 534, 542, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940). The traditional starting point for such an interpretation is the language of the statute itself. *See* Murphy, *Old Maxims Never Die: The Plain Meaning Rule and Statutory Interpretation in the Modern Federal Courts*, 75 Colum.L.Rev. 1299 (1975). The relevant provision of § 1952A reads

> Whoever travels in or causes another [including the intended victim] to travel in interstate or foreign commerce, or uses or causes another to use the mail or any facility in interstate or foreign commerce, with intent that a murder be committed ... shall be fined not more than $10,000 or imprisoned....

The statutory language is broad and unqualified. The government argues that such unqualified language makes all defendants charged who travel across or use an interstate facility, liable in federal court. Such a broad application would permit the federal government to intrude into essentially local murder cases and would upset the traditional distribution and line of demarcation between federal and state power. Such an interpretation ignores legislative history to the contrary and is at variance with the policy goals of the statute.[4]

---

**3.** Defendants do not question Congress' power to federalize the criminal law. *U.S. v. Zizzo*, 338 F.2d 577 (7th Cir.1964), *cert. denied*, 381 U.S. 915, 85 S.Ct. 1530, 14 L.Ed.2d 435 (1965); *U.S. v. Barrow*, 363 F.2d 62 (3rd Cir.1966), *cert. denied*, 385 U.S. 1001, 87 S.Ct. 703, 17 L.Ed.2d 541 (1967). Rather they question whether Congress

intended to preempt state and local law enforcement.

**4.** As the Supreme Court has noted time and time again when applying the plain meaning maxim, when the plain meaning "has led to absurd or futile results, this Court has looked beyond the

**1.**

Congress was very clear in the Senate Report accompanying the proposed legislation that the presence of a federal nexus alone should not convert all contract murders into matters of federal responsibility. S.Rep. No. 225, 98th Cong., 1st Sess. 305 (1983), U.S.Code Cong. & Admin.News 1984, pp. 3182, 3484. Although the legislative history which sheds light on the intent and purpose of the Congress is limited,[5] it is, nonetheless, unambiguous. Congress enacted the Murder-for-Hire Statute to combat the professional contract killer employed by organized criminal elements. The Congress recognized that the Statute would permit concurrent jurisdiction with state and local forces. Noting the concern of local prosecutors over the federal incursion into state territory, the Senate Report advised that "Federal jurisdiction should be asserted selectively." *Id.* at 305, 1984 U.S. Code Cong. & Admin.News 1984, p. 3484. The Report then set out several criteria which should be present to support and warrant federal intervention in a murder investigation. Jurisdiction should be

> based on such factors as the type of defendants reasonably believed to be involved and the relative ability of the Federal and State authorities to investigate and prosecute. For example, the apparent involvement of organized crime figures or the lack of effective local investigation because of the interstate features of the crime could indicate that federal action was appropriate.

*Id.* at 305, U.S.Code Cong. & Admin.News 1984, p. 3484.

The Committee was aware of the federalism issue posed and advised that the Statute should not be used to usurp local responsibility. The Senate Report concluded that [the Statute] "does not mean, nor does the Committee intend, that *all or even most* such offenses should become matters of Federal responsibility." *Id.* at 305, U.S. Code Cong. & Admin.News 1984, p. 3484. (emphasis added.) Congress conceived that "coordination" and "cooperation" between federal and state officials would be the standard not federal intervention and usurpation.

Congress' sensitivity to the federalism issues presented was also expressed in the Senate hearings. The one witness who spoke to the proposed statute, was Mr. Edwin Miller, San Diego, California District Attorney, the President-Elect of the National District Attorneys Association. The Committee was very conscious to assuage Miller's concerns over excessive federal intervention. Speaking for the subcommittee, Senator Laxalt stated *"The last thing we want* to do in this package *is to intrude unnecessarily* into the State and local realm. *We just do not want to do that."* *Hearings on the Comprehensive Crime Control Act,* 98th Cong., 1st Sess. at 295. (emphasis added.)

**2.**

To avoid excessive federal intervention, Congress intended that the Statute should be utilized only when federal investigations were needed. It saw a need for federal intervention to prosecute those crimes committed by organized criminal enterprises identified by certain shared characteristics. They are organized according to some formalized corporate-like structure and are motivated by profits and power. *See Organized Crime and the Use of Violence: Hearings Before the Permanent Subcommittee on Investigations of the Senate Committee on Governmental Affairs,* 96th Cong., 2d Sess. 17–19 (1980). (Testimony of William H. Webster, Director,

---

words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole,' this Court has followed that purpose, rather than the literal words." *American Trucking,* 310 U.S. at 543, 60 S.Ct. at 1064.

**5.** The meaning of the proposal was addressed in the Senate Report accompanying the bill and once, in the Senate hearings on the bill. Although the amount of attention to the bill was not significant, Congress was very clear on its meaning and how it should be used by federal prosecutors and the courts.

Federal Bureau of Investigation.) [6] Local law enforcers encounter difficulties when prosecuting organized criminal figures who operate from another state and may live as respected citizens in the state of their abode. They often encounter jurisdictional and financial limitations which weaken their capacity to investigate nationally operated crimes. Thus, the Act was conceived to give authority to federal investigators to assist the states in prosecuting complex cases with multiple defendants from different states. *See* S. Report No. 225 at 305.

This rationale authorizing federal intervention based upon the surrounding circumstances and type of crime, not simply the existence of an interstate nexus, was also the basis behind the enactment of the Murder-for-Hire's companion statute, commonly referred to as the Travel Act, § 1952 and informs the application of § 1952A as well. See H.R.Rep., No. 966, 87th Cong., 1st Sess, reprinted in 1961 U.S.Code Cong. & Ad.News 2664.

Congress explicitly stated "that § 1952A follows the format of § 1952." S. Report No. 225 at 306, U.S.Code Cong. & Admin. News 1984, p. 3485. The Statute was enacted to fill in the jurisdictional vacuum left by the Travel Act. The Act did not impose federal criminal liability for pure contract murders committed without a drug, bribery or gambling component. The murder-for-hire provision grants this jurisdiction. In the leading case examining the jurisdictional scope of the Travel Act, the Supreme Court noted,

> that the Act was aimed primarily at organized crime and more specifically, at persons who reside in one State while operating or managing illegal activities located in another.

*U.S. v. Rewis,* 401 U.S. 808, 811, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971).

Congress' express reference to the format of § 1952 as the model for § 1952A is strong evidence that Congress intended to duplicate the original statute's jurisdictional scope. The similarity of the relevant language in both is equally strong evidence of their identical scope.[7] There is nothing in the legislative history which indicates that Congress intended to expand the jurisdictional scope of the Murder-for-Hire provision beyond the Travel Act. The government contends that since murder is a more heinous crime than bribery, narcotics, prostitution and the other lesser crimes specified in the Travel Act, the federal enforcers should have more expansive jurisdictional tools. However, the government rests entirely upon one case, *U.S. v. Varboro,* 597 F.Supp. 1173 (S.D.N.Y.1984) which is improperly relied upon for its claim. It presented no additional valid evidence to substantiate its suggestion. Rather the government's argument ignores the purpose behind the statutes to authorize federal jurisdiction when state forces are inadequate. State and local police have been competently prosecuting murder cases since the beginning of the republic. Their difficulty does not center upon the category of crime but rather the type of defendant and his or her national enterprise.

Since the Murder-for-Hire Statute is relatively new, no case law has developed examining its jurisdictional scope. In fact no court has to date examined the application

**6.** When discussing an adequate definition for organized crime, the subcommittee referred back to the President's Commission on Law Enforcement and the Administration of Justice which observed

> Organized Crime is a society that seeks to operate outside control of the American people and their governments. It involves thousands of criminals, working in structures as complex as those of any large corporation, subject to laws more rigidly enforced than those of legitimate governments. Its actions are not impulsive but rather the result of

intricate conspiracies, carried on over many years and aimed at gaining control over whole fields of activity in order to amass huge profits.

The President's Commission on Law Enforcement and Administration of Justice, Task Force Report: Organized Crime 1 (1967). *Id.* at 64.

**7.** The relevant section of § 1952 reads

> (a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to....

of the act. The government's reliance on *Varboro,* for the proposition that § 1952A was intended to have broader jurisdiction than § 1952 and cover every murder-for-hire with any interstate nexus is inappropriate. The case had nothing to do with a prosecution under the murder-for-hire statute, and if anything the Court's analysis argues diametrically against the government's proposition. On July 7, 1986, *Varboro* was rejected by the Second Circuit, *U.S. v. Riccardelli,* 794 F.2d 829, 834 (2nd Cir.1986). Both cases involved a bribery charge brought under the Travel Act and involved intrastate mailing.[8] The *Varboro* district court in passing discussed the Murder-for-Hire Statute only to affirm Congress' continuing reluctance to intrude into the vast realm of traditional state responsibilities. The court wrote "Even in enacting § 1952A Congress sought to upset the traditional distribution of federal and state power as little as necessary." 597 F.Supp. at 1179.

### C.

 The Court concludes from the above discussion that the Murder-for-Hire Statute was not intended to usurp state and local enforcement responsibility for purely local murder cases such as presented in Count One of this indictment. There is no allegation or claim that either defendant had any prior connections with or participation in any type of organized crime activity, other than the events in the nine days—between April 29 and May 7, 1986. The government's efforts to clothe it with the characteristics of an organized, on-going criminal syndicate are misplaced. Defendants' alleged actions concerned a single, isolated criminal venture albeit serious. Their actions were not related to any intricate conspiracy motivated by power and profit. A $200 contract to kill, though il-

legal and repulsive, does not implicate the intrigue of an organized criminal venture. There is no apparent justification nor has any substantial reason been offered why this prosecution cannot be handled before the District of Columbia Superior Court since the local police force handled in a competent and expeditious manner the entire criminal investigation.

If the government supports this indictment on a claim of prosecutorial discretion, then they ignore and repudiate a clear and unmistakable legislative intent to the contrary.

The Murder-for-Hire Statute does not vest this Court with jurisdiction over the defendants. Count One of the indictment is dismissed as to the defendants Vernard V. Dickson and Stanley Winslow.

---

8. The court did discuss the Murder-for-Hire Statute in dictum. The government contended that the grammatical positioning of the mailing clause in § 1952A does not require an interstate mailing. They argued that Congress intended § 1952A and § 1952 should be interpreted identically. Therefore, since § 1952A did not require an interstate mailing to exercise federal

jurisdiction neither did § 1952. When responding to the government's argument, the Circuit Court focused upon the historical tradition of a national mail service and held that any systematic use of the mails was sufficient to invoke federal jurisdiction under either statute. It did not scrutinize the jurisdictional scope of the Murder-for-Hire Statute.