**UNITED STATES of America,**
**Appellant,**

v.

**Vernard V. DICKSON.**

**UNITED STATES of America,**
**Appellant,**

v.

**Stanley WINSLOW.**

**Nos. 86–3083, 86–3084.**

United States Court of Appeals,
District of Columbia Circuit.

Argued March 20, 1987.
Decided April 17, 1987.

---

Michael D. Brittin, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Robert E. McDaniel, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellant.

G. Allen Dale (Appointed by this Court), for appellees. William J. Garber, Washington, D.C. (Appointed by this Court), was on the brief, for appellee, Stanley Winslow.

Before RUTH BADER GINSBURG and WILLIAMS, Circuit Judges, and McGOWAN, Senior Circuit Judge.

Opinion PER CURIAM.

PER CURIAM:

Defendants Dickson and Winslow were charged in a multi-count indictment with violating the federal murder-for-hire statute, 18 U.S.C. § 1952A (Supp.1985),[1] along with conspiracy and attempted murder under provisions of the District of Columbia Code.[2] The government charged that Winslow, in furtherance of the conspiracy, contacted a supposed "hit man," and offered to pay him $200 to murder Dickson's rival in an amorous affair. The "hit man" was in fact an undercover officer of the District of Columbia police force. The officer had provided defendants with a local telephone number that activated an electronic "beeper" by means of radio signals transmitted to locations in the District of Columbia, Maryland, and Virginia. On several occasions, the defendants placed calls to the officer which activated the beeper. On one such occasion the officer was in Virginia; in response to that page, he telephoned from Virginia to Winslow's home in the District of Columbia.

The district judge found these facts insufficient to warrant the exercise of federal jurisdiction, and on that ground dismissed the federal count of the indictment. *United States v. Dickson*, 645 F.Supp. 727 (D.D.C.1986).[3] Acknowledging that the beeper transmissions and the triggering of the officer's interstate call "established the requisite interstate nexus" under 18 U.S.C. § 1952A, *id.* at 729, the district court nonetheless concluded, after inspecting the statute's laconic legislative history, that Congress did not want the measure employed to "usurp state and local responsibility for purely local murder cases" such as this. *Id.* at 732.

We do not agree that the district court has discretion to decline to exercise jurisdiction over this proceeding. The statutory language is broad, unqualified, and unambiguous; in such a case, a court is seldom, if ever, empowered to deviate from the legislation's terms. "Where the language is plain and admits of no more than one meaning the duty of interpretation does not arise and the rules which are to aid doubtful meanings need no discussion." *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917); see *INS v. Cardoza-Fonseca*, —— U.S. ——, ——, 107 S.Ct. 1207, 1224, 94 L.Ed.2d 434 (1987) (Scalia, J., concurring in judgment) ("if the language of a statute is clear, that language must be given effect—at least in the absence of a patent absurdity"). *See also United States v. Albertini*, 472 U.S. 675, 680, 105 S.Ct. 2897, 2902, 86 L.Ed.2d 536 (1985) ("Courts in applying criminal laws generally must follow the plain and unambiguous meaning of the statutory language."); *Garcia v. United States*, 469

---

1. The statute reads in pertinent part:
   Whoever ... uses or causes another (including the intended victim) to use the mail or any facility in interstate or foreign commerce, with intent that a murder be committed ... as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, shall be fined not more than $10,000 or imprisoned for not more than five years, or both[.]

2. Charges under the D.C.Code may be prosecuted in federal court when "joined in the same information or indictment with any Federal offense." D.C.Code Ann. § 11–502(3) (1981).

3. The parties agree that pretrial dismissal of the sole federal count impels dismissal of the indictment as a whole. *See United States v. Jackson*, 562 F.2d 789, 793–800 (D.C. Cir.1977); *cf. United States v. Kember*, 648 F.2d 1354, 1359–60 (D.C. Cir.1980).

U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984) (courts are bound to a statute's language absent "extraordinary showing of contrary intent" in legislative history); *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) (unambiguous statutory language is conclusive absent "clearly expressed legislative intent to the contrary").

■ The limited legislative history relied upon by the district court, *see* 645 F.Supp. at 730–32, does not make the requisite extraordinary showing. Congress unquestionably was sensitive to the traditional role of state and local authorities in murder prosecutions, and did not intend to convert "all or even most such offenses [into] matters of Federal responsibility." *Id.* at 730, *quoting* S.Rep. No. 225, 98th Cong., 1st Sess. 305 (1984), U.S.Code Cong. & Admin. News 1984, pp. 3182, 3484. The expressions of congressional concern featured by the district court, however, are most sensibly read as admonitions to federal prosecutors—guidelines for the exercise of prosecutorial discretion in the application of the murder-for-hire statute. There is no suggestion that Congress intended to grant the courts license to oversee that discretion more actively than in the ordinary case. Absent allegations of prosecutorial misconduct, we hold, courts are not free to turn down federal jurisdiction once the statutory nexus has been established. *See United States v. Turkette,* 452 U.S. 576, 587, 101 S.Ct. 2524, 2530, 69 L.Ed.2d 246 (1981) (where Congress knew that RICO, 18 U.S.C. §§ 1961–1968 (1982), would alter federal-state balance in enforcement of criminal law, courts are "without authority to restrict the application of the statute" on federalism grounds); *cf. Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821) ("We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given."). Accordingly, the judgment of the district court is

*Reversed.*