### SPEAKMAN COMPANY

v.

### Caspar W. WEINBERGER, Secretary of Defense, et al.

**Appeal of MINNCO, INC.**

No. 86–5652.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 17, 1987.

Decided Feb. 2, 1988.

John S. Simcox, Annapolis, Md., for appellant.

Daniel J. Donohue, with whom Peter M. Kilcullen, Washington, D.C., was on the brief for appellee, Speakman Co.

Joseph E. diGenova, R. Craig Lawrence, Royce C. Lamberth and Wilma A. Lewis,

---

U.S. Attys., Washington, D.C., entered an appearance for appellees, Caspar W. Weinberger, Secretary of Defense, et al.

Before SILBERMAN and GINSBURG, Circuit Judges, and KOZINSKI,* Circuit Judge, United States Court of Appeals for the Ninth Circuit.

Opinion for the Court filed by Circuit Judge KOZINSKI.

KOZINSKI, Circuit Judge:

Federal Acquisition Regulation (FAR) 3.601, 48 C.F.R. § 3.601 (1986), prohibits award of a government contract to a business "owned or substantially owned or controlled by one or more Government employees." We consider whether this provision bars the award of such a contract to a business whose owner has left federal employment between bid opening and award. We also consider whether appellant's bid was "responsive" within the meaning of FAR 14.404–2(d).

## FACTS

This case involves a dispute between two bidders, Speakman Company and Minnco, Inc., over the award of a government procurement contract for the supply of 4,100 hand-held shower assemblies for United States Navy ships. These two companies responded to an invitation for Bids issued January 2, 1986, by the Defense Construction Supply Center (DCSC). At the time of the bidding, the president of Minnco, Charles M. Kelly, was employed by the federal government as a project engineer at the David M. Taylor Naval Ship Research and Development Center.

Several companies submitted sealed bids and when the bids were opened on March 5, 1986, Minnco was revealed as the low bidder. Speakman immediately protested to the Defense Logistics Agency (DLA), arguing that, since Kelly was employed by the federal government, Minnco was ineligible for a procurement contract award under

FAR 3.601. Soon thereafter, and before the contract was actually awarded, Kelly resigned from federal employment and so advised DCSC. DLA thereupon rejected Speakman's protest on the ground that, Kelly having resigned before the award of the contract, the regulation no longer barred the award. On June 27, 1986, DCSC awarded the contract to Minnco.

Speakman then brought this suit against the federal defendants, seeking a permanent injunction and declaratory relief; Minnco intervened in the action. Speakman moved for, and was granted, a temporary restraining order. Thereafter, the district court issued judgment in favor of Speakman and enjoined DCSC from awarding the contract to Minnco. The district court rejected Minnco's motion to reconsider and amend the judgment and it is from this decision that Minnco appeals. The federal defendants do not appeal.

## DISCUSSION

### I

FAR 3.601 provides as follows:

[A] contracting officer shall not knowingly award a contract to a Government employee or to a business concern or other organization owned or substantially owned or controlled by one or more Government employees.

48 C.F.R. § 3.601 (1986). Minnco urges a literal application of this language. Since Charles Kelly, Minnco's president, left his federal job before the contract was actually awarded, Minnco contends that the award was not prohibited by FAR 3.601 and therefore must be upheld. Speakman, on the other hand, argues that FAR 3.601 should be read broadly in light of the overall purpose of the procurement laws to prohibit bidding by companies owned or substantially owned or controlled by a government employee. Two approaches, two results.

The term "award" has a clear meaning: To award is "[t]o give ... after careful consideration," and "[t]o consider as being deserved or merited." *Webster's Ninth New Collegiate Dictionary* 120 (1984);

* Sitting by designation pursuant to 28 U.S.C. § 291(a) (1982).

*Black's Law Dictionary* 125 (5th ed. 1979). In the procurement context, the awarding of a government contract is the last in a sequence of events beginning with the invitation for bids. Acceptance of the bid is not the same thing as the award. *See* 1 R. Nash & J. Cibinic, Jr., *Federal Procurement Law* 283 (3d ed. 1977).

This much is apparently undisputed. Speakman does not argue that submission of the bids is the same thing as the award, but that the drafters of FAR 3.601 didn't really mean to limit the proscription to contract awards. According to Speakman, the drafters actually meant to prohibit all participation in the procurement process by companies substantially owned or controlled by government employees. Appellee's Brief at 13–15. Speakman suggests that this is the only construction consistent with the FAR's policy of avoiding " 'the appearance of favoritism or preferential treatment by the government toward its employees.' " *Id.* at 15 (quoting FAR 3.601).

■ This argument is not without appeal. There may well be good reasons for prohibiting companies owned by government employees from participating at all in the bidding process. But that is a policy decision that must be made by Congress or the agencies to which Congress has delegated its authority, not by the courts. Where the language of the regulation is unambiguous, we must apply it as written. *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *United States v. Dickson*, 816 F.2d 751, 752 (D.C. Cir.1987). By its clear terms, the regulation proscribes only the awarding of government contracts to companies owned

or controlled by government employees; it says nothing about bidding.

Our conclusion is supported by the fact that DLA has interpreted the regulation as allowing the award of this contract.[1] This construction of FAR 3.601 is in accord with that of the Comptroller General, who has broad oversight over government procurement. *See, e.g., Big Sky Resource Analysts,* B–224888, 87–1 C.P.D. ¶ 9, at 3 (Jan. 5, 1987); *Sterling Medical Assocs.,* B–213650, 84–1 C.P.D. ¶ 60, at 2 (Jan. 9, 1984); *Electronics West, Inc.,* B–209720, 83–2 C.P.D. ¶ 127, at 4 (July 26, 1983).

*Sterling Medical Associates* addressed a closely analogous issue. In *Sterling,* an aggrieved bidder protested the award of a bid to another company on the ground that the owner of this company was engaged to a government employee at the time of the bid opening. Rejecting this protest, the Comptroller General stated:

> The critical time for application of DAR § 1.302.6(a) [precursor of FAR 3.601], which is intended primarily to avoid criticism of possible favoritism or preferential treatment by the government toward its employees, is the date of award. Here, the contract was entered into with Ms. Holland on October 21, and [her fiance] terminated his government employment on September 30. Therefore, the regulation does not preclude award to Ms. Holland, since [he] was not a government employee at the time of contract award.

84–1 C.P.D. ¶ 60, at 2 (citations omitted).[2] We fully agree.

## II

The district court also held that the award to Minnco violated FAR 14.404–2(d), which provides that "[a] bid shall be reject-

---

1. In the procurement context, "the responsibility for determining whether a firm competing for a contract should be excluded from the competition in order to avoid actual or apparent favoritism or preferential treatment rests primarily with the procuring agency." *Revet Environment & Analytical Labs., Inc.,* B–221002.2, 86–2 C.P.D. ¶ 102, at 3 (July 24, 1986); *see also M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1301 (D.C.Cir.1971); *Cooley Container Corp.,* B–220801, 86–1 C.P.D. ¶ 114, at 3 (Jan. 31, 1986).

2. Speakman argues that *Sterling* is distinguishable because the successful bidder there was merely engaged to a government employee, and not an employee herself. But the Comptroller General did not view the distinction as crucial. He plainly considered the matter as if award to Ms. Holland would have been improper if her fiance had been a government employee at the time of award.

ed when the bidder imposes conditions that would modify requirements of the invitation or limit the bidder's liability to the Government, since to allow the bidder to impose such conditions would be prejudicial to other bidders." 48 C.F.R. § 14.404–2(d) (1986). The district court was troubled by the idea that Minnco was not truly bound by its bid; if Kelly had come to believe that the contract was no longer in its interest, he could have retained his government employment, and Minnco could thereby have escaped its contractual obligations. "By leaving to himself the final power of acceptance, the government employee in general and Kelly in particular leave themselves open for rejection of their bids." *Speakman Co. v. Weinberger*, No. 86–CV–2010, slip op. at 4, (D.D.C. Aug. 19, 1986). For this reason, the district court found Minnco's bid nonresponsive within the meaning of FAR 14.404–2(d). *Id.*

We reject this use of FAR 14.404–2(d) to enlarge the requirement of FAR 3.601. In fact, a successful bidder in Minnco's situation cannot escape his obligations by failing to sever its ties to the government. Under FAR 3.602, the agency may award the contract despite bidder's ineligibility under section 3.601 when "there is a most compelling reason to do so...." 48 C.F.R. § 3.602 (1986). The bid is therefore not rendered illusory by the mere fact that the contractor has some control over its eligibility at the time of award.

More generally, however, there is always a risk that the contractor's eligibility status will change between the time of bid and the time of award. Agencies, therefore, are given broad latitude in deciding whether the bidder's ineligibility at one point in the process should render it ineligible at the time of award. *See* n. 1 *supra*. While the agency might well refuse to consider the bid of a contractor who is not eligible at the time of bidding, we decline to hold that it must always do so. The facts and circumstances of any particular case may bear significantly upon that decision. The agency, intimately familiar with the nature of the contract and the circumstances of the various bidders, is in the best possible position to make a reasoned determination. Courts must give the agency's determination substantial deference.

Here, DLA was aware of Minnco's situation and the challenge against it. Letters from Speakman detailed the substance of the bid, including the names of all the offerors and the amount of each bid. In a letter dated April 14, 1986, Speakman explained the precise scope of Charles Kelly's governmental duties while president of Minnco. Joint Appendix (JA) at 10–12. This letter also recounted Kelly's relationship with Speakman Company starting in February of 1981. *Id.* at 10. Moreover, DLA also had before it evidence describing Kelly's connection with Environmental Systems, another bidder. *Id.* at 11. Finally, DLA considered Speakman's argument that Kelly "is not a responsible bidder in that he does not have an appropriate organization, skilled labor, nor the facility to produce the contract." *Id.* DLA also had before it a detailed letter from Minnco responding to each of Speakman's allegations. *Id.* at 13–15.

DLA explained its decision in a letter dated June 26, 1986. *Id.* at 16–17. And, even then, DLA provided Speakman with another opportunity to support its case, stating: "In the event Speakman Company has any solid evidence that Minnco or Mr. Kelly has engaged in unlawful conduct of which Speakman personnel have personal knowledge, we request that you promptly advise us.... [W]e will gladly investigate the allegations and take whatever additional action is indicated." *Id.* at 16.

DLA thoughtfully considered the facts and evidence in this protest and decided to approve the award. We conclude that DLA did not abuse its discretion in holding Minnco to its low bid instead of paying more for the same product from the next lowest bidder.

## III

The district court was troubled because DLA did not notify Speakman of the contract award to Minnco until 11 days

after the award. The Act provides for an automatic stay of the contract if the aggrieved bidder applies to the relevant federal agency for the stay within ten days of the award. 31 U.S.C. § 3553(d)(1) (Supp. III 1985). Because Speakman was not notified until after the time for obtaining a stay had elapsed, the district court found that "the defendant agency prejudiced plaintiff's rights." JA at 106. We agree with the district court that DLA's failure to notify Speakman in a timely fashion was improper; we trust that the agency will be more careful in the future. However, this defect is not a sufficient basis for denying Minnco a contract to which it is otherwise entitled. Section 3553(d)(1) provides only an interlocutory remedy designed to maintain the status quo while the merits of the protest are considered. Here, that purpose was served when the district court issued a temporary restraining order and considered Speakman's objection on the merits.

## CONCLUSION

The language of FAR 3.601 is clear. Minnco met all the requirements for the award of a contract under the Federal Acquisition Regulations. Moreover, we hold that Minnco's bid was "responsive" within the meaning of FAR 14.404–2(d). Consequently, the responsible agency acted within its discretion in upholding the award of the shower assembly contract to Minnco. The district court erred in overturning that decision.

*Reversed.*