**UNITED STATES of America,**

v.

**Jose Eugenio PAREDES, a/k/a "Toshiba," Defendant.**

**No. 96 Cr. 286 (SAS).**

United States District Court, S.D. New York.

Dec. 9, 1996.

James J. Benjamin, Jr., Assistant United States Attorney, Southern District of New York, New York City, for the Government.

David Meister and David E. McCraw, Rogers & Wells, New York City, for Defendant.

### OPINION AND ORDER

SCHEINDLIN, District Judge:

On April 18, 1996, defendant was indicted on two counts of violating the federal murder-for-hire statute, 18 U.S.C. § 1958 and one count of possession by a felon of ammunition, 18 U.S.C. § 922(g). This opinion addresses defendant's pretrial motion to dismiss his indictments under 18 U.S.C. § 1958 for lack of federal jurisdiction and defendant's request for a pretrial hearing to determine whether the government manufactured

federal jurisdiction in this case. For the reasons set forth below, defendant's motion is granted and Counts One and Two of the April 18 indictment are dismissed. Accordingly, no hearing is required.

## Factual Background

For the purposes of this motion, the following facts will be accepted as true.[1] *See* 2A James W. Moore, *Moore's Federal Practice* 12–52 (2d ed. 1996) (facts asserted in pleadings should be accepted as true for purposes of determining existence of subject matter jurisdiction). In January or early February of 1996, a confidential informant ("CI–1") informed FBI Agent Robert Bukowski that defendant had discussed a contract murder with other persons. CI–1 then met with defendant, who told CI–1 that he would pay $6,000 to hire someone to murder a man whom the government later identified as Eugenio Perez. CI–1 obtained defendant's beeper number at that meeting. On February 15, 1996, at the direction of Agent Bukowski, CI–1 told defendant that CI–1 had arranged for someone else to carry out the contract murder. The person identified by CI–1 was an undercover police officer ("UC–1"). Subsequently, on February 16, either CI–1 or UC–1 called defendant's beeper from within New York and left a call-back number in the Bronx. Defendant then called the Bronx number from within New York and spoke to CI–1 or UC–1 or both.

Later, on February 18, a second confidential informant ("CI–2") obtained defendant's beeper number from someone the government alleges was defendant's co-conspirator. On February 19, 1996, CI–2 placed a call to the beeper number from within New York and left a Bronx call-back number. Soon afterwards, defendant called that number from within New York and spoke with CI–2.

Defendant was arrested on February 22, 1996, on charges of using an interstate commerce facility in the commission of a murder-for-hire scheme in violation of 18 U.S.C.

§ 1958. Defendant was subsequently charged with possession by a felon of ammunition in violation of 18 U.S.C. § 922(g) when the government discovered 10 bullets in defendant's car at the time of his arrest. On April 18, 1996, defendant was indicted on two counts of violating the murder-for-hire statute and one count of possession of ammunition by a convicted felon.

## Applicable Legal Standards

The federal murder-for-hire statute states in pertinent part:

> Whoever ... uses or causes another (including the intended victim) to use the mail or any facility in interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States ... shall be fined under this title or imprisoned for not more than ten years, or both....

18 U.S.C. § 1958. The term "facility in interstate commerce" includes "means of transportation and communication". 18 U.S.C. § 1958(b). The requirement that defendant use the mail or a facility in interstate commerce (the "interstate nexus requirement") is jurisdictional. *See United States v. Razo–Leora,* 961 F.2d 1140, 1148 (5th Cir.1992). *Cf. United States v. Sigalow,* 812 F.2d 783, 785–86 (2d Cir.1987) (the interstate nexus requirement of the Travel Act, 18 U.S.C. § 1952, is jurisdictional and not an additional element that government was required to prove); *United States v. Blackmon,* 839 F.2d 900, 907 (2d Cir.1988) (interstate nexus requirement of wire fraud statute is jurisdictional). The interstate nexus requirement arises from "constitutional limits on Congressional power over intrastate activities under the Commerce Clause". *See Blackmon,* 839 F.2d at 907 (quoting *United States v. Bryant,* 766 F.2d 370, 375 (8th Cir.1985), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986)). Thus, where no such nexus is established, an indictment under the statute must

---

1. The parties appear to agree on all the facts set forth below with the exception of who called defendant's beeper on February 16, 1996. Defendant claims that a confidential informant called defendant's beeper. *See* Defendant's Memorandum of Law in Support of Pretrial Motions at 3. The government asserts that an undercover police officer, whom a confidential informant had identified to defendant as a potential contract assassin, called defendant's beeper. *See* Government's Memorandum in Opposition to Defendant's Pretrial Motions at 3. This discrepancy is not relevant to the determination of the instant motion.

be dismissed. If defendant's conduct does implicate federal jurisdiction by satisfying the interstate nexus required under the statute, the Court may not decline to exercise jurisdiction over the charges against him. *See United States v. Dickson,* 816 F.2d 751, 752 (D.C.Cir.1987) *(per curiam ).*

■ A federal court may challenge *sua sponte* subject matter jurisdiction. *See Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908) (Supreme Court raising objection to federal court jurisdiction). *See generally* Erwin Chemerinsky, *Federal Jurisdiction* 249–250 (2d ed. 1994) (explaining that federal courts may raise *sua sponte* objections to subject matter jurisdiction because the restrictions on federal jurisdiction advance important values of federalism and separation of powers). Here, defendant has expressly challenged the existence of federal subject matter jurisdiction. "[O]nce the existence of subject matter jurisdiction is challenged, the burden of establishing it always rests on the party asserting jurisdiction." 2A *Moore's Federal Practice* at 12–50.

### Discussion

This case presents a question that has not yet been addressed by any Court of Appeals: Is the interstate nexus required for federal jurisdiction under 18 U.S.C. § 1958 satisfied when a beeper is used solely within one state? To answer this question it is necessary to review the language of the statute, the legislative history and the applicable case law.

### I. Plain Meaning Interpretation of 18 U.S.C. § 1958

In applying criminal laws, courts "generally must follow the plain and unambiguous meaning of the statutory language." *United States v. Albertini,* 472 U.S. 675, 680, 105 S.Ct. 2897, 2902, 86 L.Ed.2d 536 (1985). The starting point in determining the question

presented must therefore be the language of the statute itself. The instant motion turns on whether defendant used or caused another to use a facility in interstate commerce within the meaning of the murder-for-hire statute. Specifically, the question is whether defendant used a facility in interstate commerce by (1) giving CI–1 and CI–2 his beeper number to further his murder-for-hire scheme; (2) causing CI–1 and CI–2 to call his beeper number for the same purpose; or by (3) responding to calls to his beeper from CI–1 and CI–2 for the same purpose. It is undisputed that defendant, UC–1, CI–1, and CI–2 acted at all relevant times within the geographic boundaries of New York.

The government's theory rests solely on the proposition that the beeper system, which emits an interstate signal each time it is activated, is intrinsically a "facility in interstate commerce." [2] Thus, the government contends that defendant used a facility in interstate commerce within the meaning of § 1958 by providing his beeper number and by returning calls placed to that number in furtherance of a murder-for-hire scheme. In support of this argument, the government relies on *United States v. Stevens,* 842 F.Supp. 96 (S.D.N.Y.1994), which appears to be the first and only federal court opinion directly on point. *Stevens* involved a similar murder-for-hire case in which the only basis for establishing an interstate nexus was the defendant's in-state call to a paging system. The *Stevens* court held:

> The defendant's call to such a system cannot be considered an intrastate act, no matter how its signals were routed. The paging system's very purpose is to reach across state lines to find people. In pursuit of that purpose, it sends radio waves across the borders of three states each time it is activated; every time the system is used, it is used in an interstate manner. It makes no difference that the paging party may not know of the system's inter-

2. The government's theory that a paging system is an intrinsically interstate facility would place an interstate paging system on the same footing as the United States mails. *See United States v. Riccardelli,* 794 F.2d 829, 831 (2d Cir.1986) (mailing need not be interstate to implicate federal jurisdiction under the Travel Act because

"[u]se of the United States mails, whether to mail a letter across the street or across the nation, historically has been recognized by Congress as use of an exclusively federal instrumentality.") However, defendant's paging system is privately owned and the historical basis of the *Riccardelli* holding does not apply to paging systems.

state range. Further, it is of no importance that the paged party is ultimately reached in the same state as the paging party. This does not change the fact that by using the interstate system, the paging party, in effect, makes an interstate search.

*Id.* at 98. Thus *Stevens* distinguishes a call to an interstate paging system from a local telephone call which similarly involves an interstate communication system because the former makes an "interstate search" while the latter merely connects one in-state point to another.[3] *Id.* This theory, advanced by the government here, allows federal jurisdiction to turn on the means by which the defendant's chosen mode of communication functions rather than the location of the communicating parties.

Although grammatically viable, this reading of the statute is not the only reasonable interpretation of the murder-for-hire statute. A rigorous parsing of the statute also leads to the conclusion that it is the "use" that must be "in interstate commerce", not the "facility". Stated another way, the statute may be read to indicate that the interstate nexus requirement turns not on the facility's interstate capacity but *its actual use in the particular case*.[4] *See Minneapolis & St. Louis R. Co. v. Winters*, 242 U.S. 353, 357, 37 S.Ct. 170, 172, 61 L.Ed. 358 (1917) (Holmes, J.) (in determining the inter- or intra-state character of a train, "[i]ts character as an instrument of commerce depended on its employment at the time, not upon remote probabilities or upon accidental later events.") *See also Rosen v. Albern Color Research, Inc.*, 218 F.Supp. 473, 476 (E.D.Pa.1963) ("The question as to whether a particular instrumentality is one of interstate commerce is to be determined by the use to which it is put, rather than its nature.") (citing 15 C.J.S. § 41). *See generally* 15A Am.Jur.2d, Commerce § 8 ("Whether a particular business or activity is interstate or intrastate commerce depends basically upon the facts of each case") (citation omitted).

The phrase "use ... any facility in interstate or foreign commerce" is inherently ambiguous.[5] As discussed, there are at least two grammatically cognizable interpretations—one stressing "use" and the other stressing "facility". Faced with unavoidably ambiguous statutory wording, a court must look behind the words themselves in an attempt to reconstruct their purpose. *See United States v. R.L.C.*, 503 U.S. 291, 298, 112 S.Ct. 1329, 1334, 117 L.Ed.2d 559 (1992); *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 395, 71 S.Ct. 745, 751, 95 L.Ed. 1035 (1951) (Jackson, J., concurring).

## II. Legislative History of 18 U.S.C. § 1958

The murder-for-hire statute was not intended to completely preempt state prosecution of similar crimes. The statute's limited legislative history demonstrates that Congress did not intend to convert "all or even most such offenses [into] matters of federal responsibility." S.Rep. No. 225, 98th Cong., 1st Sess. 305 (1984), U.S.Code Cong. & Admin.News 1984, at 3182, 3484. Rather, Congress intended that:

> Federal jurisdiction should be asserted selectively based on such factors as the type of defendants reasonably believed to be involved and the relative ability of the federal and state authorities to investigate and prosecute. For example, the apparent involvement of organized crime figures or the lack of effective local investigation because of the interstate features of the

3. Purely intrastate telephone calls do not give rise to federal jurisdiction under the wire fraud statute, 18 U.S.C. § 1952, and similar enactments. *See Smith v. Ayres*, 845 F.2d 1360, 1366 (5th Cir.1988); *United States v. Freeman*, 524 F.2d 337, 339 (7th Cir.1975), *cert. denied*, 424 U.S. 920, 96 S.Ct. 1126, 47 L.Ed.2d 327 (1976); *McCoy v. Goldberg*, 748 F.Supp. 146, 154 (S.D.N.Y.1990); *Utz v. Correa*, 631 F.Supp. 592, 595–96 (S.D.N.Y.1986).

4. The government maintains that defendant did "use" his beeper "in interstate commerce" because the paging system emitted an interstate signal. This argument fails for reasons set forth below in Part IV of this Opinion.

5. The statute's ambiguity may be illustrated by observing that a more precise drafting of the statute might have read either (1) "Whoever ... uses or causes another ... to use the mail or any facility *in the course of* interstate or foreign commerce"; or (2) "Whoever ... uses or causes another ... to use the mail or any facility *that operates in* interstate or foreign commerce".

crime could indicate that federal action was appropriate.... Cooperation and coordination between federal and state officials should be utilized to ensure that the new murder-for-hire statute is used in appropriate cases to assist the states **rather than to allow the usurpation of significant cases by federal authorities that could be handled as well or better at the local level.**

*Id.* (emphasis added). This language has been interpreted to be a guideline for the exercise of prosecutorial discretion in the application of the murder-for-hire statute. *See Dickson,* 816 F.2d at 753 (single interstate telephone call suffices to establish federal jurisdiction under murder-for-hire statute). However, this brief quotation from the legislative history confirms that even before the mushrooming of interstate communication technology such as beepers, cellular phones and email, Congress was concerned that the murder-for-hire statute would allow federal "usurpation" of essentially local cases.

Placed against this backdrop of Congressional intent, the government's interpretation of § 1958 rests on shaky ground. By focusing on the interstate nature of the paging system, the government advocates an extremely broad exercise of federal jurisdiction. The spread of innovative interstate communications technology, combined with this interpretation of the interstate nexus requirement, sweeps within the province of federal jurisdiction crimes previously considered to be entirely local in nature. In enacting § 1958, Congress's expressed intent was to provide a statutory mechanism for prosecuting "crimes with interstate features". That a defendant who never travelled from one state to another, conducted an interstate transaction, or communicated across state lines could now be prosecuted under this Act because of the evolution in communications technology runs against the grain of the statute's legislative history.

### III. Constitutional Limits on 18 U.S.C. § 1958

Under our federal system, the " 'States possess primary authority for defining and enforcing criminal law.' " *United States v. Lopez,* 514 U.S. 549, —— n. 3, 115 S.Ct. 1624, 1631 n. 3, 131 L.Ed.2d 626 (1995) (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 635, 113 S.Ct. 1710, 1720, 123 L.Ed.2d 353 (1993) (quotation omitted)). *See also Screws v. United States,* 325 U.S. 91, 109, 65 S.Ct. 1031, 1039, 89 L.Ed. 1495 (1945) (plurality opinion) ("Our national government is one of delegated powers alone. Under our federal system the administration of criminal justice rests with the States except as Congress, acting within the scope of those delegated powers, has created offenses against the United States."). Thus, "[w]hen Congress criminalizes conduct already denounced as criminal by the States, it effects 'a change in the sensitive relation between federal and state criminal jurisdiction.' " *Lopez,* 514 U.S. at —— n. 3, 115 S.Ct. at 1631 n. 3 (quoting *United States v. Enmons,* 410 U.S. 396, 411–412, 93 S.Ct. 1007, 1015–1016, 35 L.Ed.2d 379 (1973) (quotation omitted)). *See generally* Thomas J. Eagan, *The Jurisdictional Element of 18 U.S.C. § 844(j), A Federal Criminal Commerce Clause Statute,* 48 Wash. U.J.Urb. & Contemp.L. 183, 186 (Summer 1995) (discussing origin and limits of federal criminal jurisdiction); Kathleen F. Brickey, *Criminal Mischief: The Federalization of American Criminal Law,* 46 Hastings L.J. 1135, 1172 (April 1995) (citing, *inter alia,* Charles Warren, *Federal Criminal Laws and the State Courts,* 38 Harv.L.Rev. 545, 546–48 (1925)).

Last year, for the first time in six decades, the Supreme Court struck down a federal criminal statute on the ground that its scope exceeded Congress's power under the Commerce Clause. *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). Of primary concern to the *Lopez* Court was the breadth of the theories advanced by the government [6] to justify the constitutionality of the statute in question:

---

**6.** In defense of § 922(q) of the Gun–Free School Zone Act, the government argued (1) possession of a firearm in a local school zone may result in a violent crime and that violent crime can be

expected to affect the functioning of the national economy; and (2) the presence of guns in schools poses a substantial threat to the educational process by threatening the learning envi-

Under the theories that the Government presents in support of § 922(q), it is difficult to perceive any limitation on federal power, even in areas such as criminal law enforcement or education where States historically have been sovereign. Thus, if we were to accept the Government's arguments, we are hard-pressed to posit any activity that Congress is without power to regulate.

*Id.* at ——, 115 S.Ct. at 1632. The Court refused to uphold the government's theories because "[t]o do so would require us to conclude that the Constitution's enumeration of powers does not presuppose something not enumerated, and that there never will be a distinction between what is truly national and what is truly local." *Id.* at ——, 115 S.Ct. at 1634 (citing *Gibbons v. Ogden,* 9 Wheat (22 U.S.) 1, 195, 6 L.Ed. 23 (1824), and *N.L.R.B. v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 30, 57 S.Ct. 615, 620–621, 81 L.Ed. 893 (1937)). *See* Adam H. Kurland, *First Principles of American Federalism and the Nature of Federal Criminal Jurisdiction,* 45 Emory L.J. 1, 16–17 (Winter 1996) (*Lopez* was decided on Commerce Clause grounds); *see also* Deborah Jones Merritt, *Commerce!,* 94 Mich. L.Rev. 674, 685–689 (Dec. 1995) (primary concern of *Lopez* Court was to recognize some bounds to federal criminal jurisdiction based on Commerce Clause).

*Lopez* stands for the proposition that Congress may not limitlessly expand federal criminal jurisdiction based on the Commerce Clause. Rather, in interpreting federal criminal statutes, courts must keep in mind that Congress does not enjoy "a general police power of the sort retained by the States".

*Lopez,* —— U.S. at ——, 115 S.Ct. at 1634. After *Lopez,* the constitutionality of assertions of federal jurisdiction over what are essentially local crimes must be closely scrutinized.

The government's interpretation of 18 U.S.C. § 1958 must be reviewed with *Lopez* and the state of modern communications technology in mind. Intrastate communications have taken on an interstate quality because of the means by which beepers, cellular phones, email and telephones function. It is very likely that in the near future all electronic forms of communication will be transmitted across state lines regardless of the location of the communicating parties. As the original role of federal criminal jurisdiction was intended to be limited in nature, it is troubling to permit technological innovation to significantly expand its scope without a specific expression of Congressional intent.[7]

The weakest link in the government's argument is its failure to set reasonable bounds on federal criminal jurisdiction. Under the government's theory, an email sent from the kitchen to the office down the road might implicate federal jurisdiction simply because the electronic message was transmitted from a computer in New York to a computer in New Jersey before reaching its final destination.[8] After *Lopez,* the government's theory seems a slender reed upon which to rest the exercise of federal jurisdiction over defendant's alleged conduct.

## IV. Defendant's Conduct in the Instant Case

It is undisputed that defendant's allegedly unlawful conduct took place at all times with-

ronment which in turn results in a less productive citizenry. *Lopez,* 514 U.S. at ——, 115 S.Ct. at 1632.

7. *See, e.g.,* Greg Hollon, *After the Federalization Binge: A Civil Liberties Hangover,* 31 Harv.C.R.– C.L.L.Rev. 499 (Summer 1996) (examining problematic civil liberties issues resulting from the rapid expansion of federal criminal jurisdiction).

8. Of course, the way email messages are transmitted differs from the way paging systems operate. When the pager and the beeper carrier are within the same state, the paging system's signal to the beeper carrier is solely an intrastate transmission. In other words, even though the signal itself may be emitted throughout an interstate

area, the receipt of the signal—and thus the electronic transmission between the paging system and the beeper carrier—is an intrastate event. An intrastate email message, however, may necessarily involve an interstate transmission because of the structure of the internet: although the email is sent and received within one state, the message itself may be transmitted across state lines. *See* G. Burgess Allison, *The Lawyer's Guide to the Internet* 31–32 (1995) (describing the manner in which email messages are transmitted). Nevertheless, the manner in which the communication facility operates does not determine the outcome. In evaluating the assertion of federal jurisdiction, the focus should be on the location of the communicating parties.

in the boundaries of New York. It is also undisputed that the action of the government's agents also occurred within those boundaries. The meetings and telephone calls that form the basis of the government's case were all intrastate transactions. The only interstate element of the entire transaction consisted of intrastate calls to defendant's interstate paging system.

■ The language of the murder-for-hire statute is unclear as to whether the intrastate use of an interstate communications facility satisfies the constitutionally-required interstate nexus. Yet when the person who calls the paging system and the person who carries the beeper are both within the same state, neither have used the paging system to conduct interstate commerce. That the paging system had the capacity to find the beeper owner in another state is not determinative; what matters is the actual location of the parties at the time the paging system was used.

This interpretation of the interstate nexus requirement of § 1958 is consistent with the statute's legislative history. By allowing federal jurisdiction to expand in lock-step with communications technology, the government threatens to transform virtually all murder-for-hire schemes that involve electronic forms of communication into federal crimes despite Congress's expressed intent to avoid such a result. The historic limits of federal criminal jurisdiction, together with the Supreme Court's recently expressed warnings in *Lopez*, also support an interpretation of § 1958's interstate nexus requirement that demands more than the government presents here.

The government has failed to sustain its burden of establishing federal jurisdiction over defendant's allegedly unlawful conduct. The murder-for-hire charge must therefore be dismissed.

### Conclusion

For the reasons stated above, I find the government agents' intrastate calls to defendant's beeper, and defendant's response to those calls, did not implicate federal jurisdiction as required by 18 U.S.C. § 1958. Defendant's motion to dismiss Counts One and Two of the indictment is granted. No hearing is required to determine whether the government manufactured jurisdiction with regard to these counts. A conference is scheduled for 11.00 A.M., December 17, 1996.

SO ORDERED.